ALFRED ROE et al., Executors, etc., Respondents, *v.* CAROLINE A. STRONG et al., Appellants.

A local history is not competent evidence upon the question as to the date when possession and occupancy of land by a private individual began.

*It seems* the presumption is, that the title of a person in possession of upland adjoining Setauket bay, in the town of Brookhaven, Long Island, before the Nichol's patent to that town of 1666, extended to high-water mark.

As to a possession originated after said patent and a title derived under it, it *seems* the cliff is the boundary on the water side, leaving a strip of land along the shore above high-water mark, which was reserved for common use.

By virtue of said patent and the Dongan patent of 1686 and the confirmation thereof by the Colonial government, the said town was vested with title to the lands under the waters of the bays and harbors included within the boundaries of the patents, as well as to the uplands not already the subject of private ownership.

The title to the lands under water vested in the town, subject to the public right of navigation, and *it seems* the town may not alienate the title so acquired to the material prejudice of the common right.

A title in fee will not be implied from user, where an easement only will secure the privilege enjoyed.

Where, under grant made by the trustees of said town, an individual erected a wharf and a bridge over the water of the bay. *Held,* that if the grant was unlawful and the construction an unlawful obstruction of navigation, the wrong could not be redressed by action brought by an individual who had suffered no special injury ; that plaintiffs in such an action had no standing unless they established that the title of the town had been divested and had been acquired by them.

In an action of trespass to recover damages for the erection of the wharf and bridge, plaintiffs claimed under an unrecorded deed executed by S. in 1768, which purported to convey "a certain piece of salt thatch" by lines which included the *locus in quo.* Plaintiffs proved that from time to time the grantees under the deed cut the salt thatch growing

on the premises, and that one of them leased to another the right to cut thatch; there was no evidence that the town in any way ever recognized any title under the deed or that it had any notice of it. The premises were never enclosed, but remained open, subject, without obstruction, to the ebb and flow of the tide and to the uses of a public landing place. It also appeared that the trustees of the town exercised jurisdiction over the part of the shore in question and inconsistent with the claim of title made by plaintiffs. *Held,* the evidence failed to show any title by adverse possession; that assuming the town was cognizant of the acts of S. and his grantees in cutting the thatch, that they claimed an exclusive right and that it acquiesced therein, this, at most, gave plaintiffs simply a prescriptive right as against the town to take the thatch; it did not confer a title to the soil

(Argued October 19, 1887; decided November 29, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 9, 1884, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury.

This action was brought to recover damages for an alleged trespass and to compel the removal of the structures complained of.

The complaint alleges that plaintiffs are owners of certain premises situate at Setauket, in the town of Brookhaven, Suffolk county, adjacent to and in front of an arm of Setauket Harbor, and a navigable bay or arm of the sea; a public highway and so used for many years; that defendants are owners of a parcel of land called Strong's Neck, situate upon the opposite shore of said bay, and which connects with the main land, where plaintiffs' premises are situated, by a public highway around the shore, and which was the usual means of communication between Strong's Neck and the village of Setauket. It also alleges that in July, 1879, the defendants wrongfully commenced, and at the time of bringing the action continued, the erection of a bridge from Strong's Neck to the main land and over and across the bay; sunk piles in the land under water, and also on the plaintiffs' lands; that its southwestern terminus was built or was intended to be built upon

plaintiffs' lands; and that for such purpose defendants unlaw-
fully entered upon their lands; that defendants have unlawfully
raised or changed the grade of plaintiffs' lands between such
terminus and the highway, and in so doing have unlawfully
entered upon their property; that such structure is a barrier
to the passage of vessels, and will prevent their passage
beyond plaintiffs' premises, and that they will be compelled to
stop in front and discharge their cargoes thereon; and that by
the acts aforesaid defendants have encumbered and injured
plaintiffs' lands. The answer admits the erection of the
bridge and dock or wharf, but denies plaintiffs' title to the
*locus in quo.*

The facts appearing on trial and found are substantially
stated in the opinion.

*A. A. Spear* for appellants. The title of the plaintiffs
derived from Woodhull is void for want of title in the grantor,
and for not containing a definite description, which embraces
any ascertainable piece of land. (*Miller* v. *Long I. R. R. Co.*,
71 N. Y. 380; *Wheeler* v. *Spinola*, 54 id. 377; *Gardner* v. *Hart*,
1 id. 528.) The charters of the town of Brookhaven vest title
to all the harbors, shores, etc., within the town boundaries, in the
trustees of the town. (*Trustees of Brookhaven* v. *Strong*, 60
N. Y 56; *Hand* v. *Newton*, 92 id. 88.) No adverse possession
has been established. (*Wheeler* v. *Spinola*, 54 N. Y. 377; *Mil-
ler* v. *Downing*, id. 631; *Pope* v. *Hanmer*, 8 Hun, 265; *Lane* v.
*Gould*, 10 Barb. 254; Code of Civ. Pro. §§ 370, 372; *Miller*
v. *L. I. R. Co.*, 71 N. Y. 380; *Thompson* v. *Burhans*,
79 id. 93.) The grant from the trustees to Thomas S. Strong
and his heirs, made in 1825, though not put in operation
till 1878, is still valid. A grant of a license or easement
by deed cannot be lost by nonuser. (*Pope* v. *O'Hara*, 48
N. Y. 446; *Wiggins* v. *Cleary*, 49 id. 346; *Jewett* v. *Jewett*,
16 Barb. 150.) By statute the commissioners of highways
are charged with the regulation of public landings, and they
had authority to permit the improvement of this one. (Laws
of 1864, chap. 514; *Hecker* v. *N. Y. Bal. D. Co.*, 24 Barb.

215; Laws of 1813, chap. 43; Laws of 1830, chap. 56; *Post* v. *Pearsall*, 22 Wend. 460.) If the respondents own the fee of this land subject to the public use of it as a landing, even then they cannot claim damages on the ground that this structure is an increased burden upon the land. (*Hamilton* v. *N. Y. C. R. R. Co.*, 9 Paige, 171; *People* v. *Kerr*, 27 N. Y. 188; *Plant* v. *L. I. R. R. Co.*, 10 Barb. 508; *Wetmore* v. *Story*, 22 id. 414; *Drake* v. *H. R. R. R. Co.*, 7 id. 508; *Chapman* v. *Alb. & Schenectady R. Co.*, 10 id. 360; *Kelsey* v. *King*, 33 How. 49.) The trustees had power to make the grants to appellants and their ancestor. (*Trustees, etc.* v. *Strong*, 60 N. Y. 56; *Robins* v. *Ackerly*, 27 Hun, 499; *Hand* v. *Newton*, 92 N. Y. 88; *Vingut* v. *Seatauket Church*, 32 Hun, 69; 102 N. Y. 672.)

*John J. Macklin* for respondents. The homestead title is a valid title to the land to the bay, and the title of Floyd was not limited by the line of high-water, but extended to low-water line. (Duke of York's Laws, 354, 359, 378, 410, 413, 419; Statutes of the Colonial Leg. [Bradford's Laws], 2, 4; *Storer* v. *Freeman*, 6 Mass. 435, 438, 439; *Sale* v. *Pratt*, 19 Pick. 191; *Com.* v. *Charleston*, 1 id. 180; Gould on Waters, §§ 37, 169, 175; *Com.* v. *Alger*, 7 Cush. 52, 70; *Bogardus* v. *Trinity Ch.*, 4 Paige, 178; *Clement* v. *Burns*, 43 N. H. 609, 617, 619, 621; *Lapish* v. *Bangor*, 8 Green [Me.], 85; *Baker* v. *Bates*, 13 Pick. 255; *Com'rs* v. *Kempshall*, 26 Wend. 404, 413; *Canal Com'rs* v. *People*, 5 id. 447; *Canal App'rs* v. *People*, 17 id. 621; *Martin* v. *Wardell*, 16 Pet. 413.) The deed of Brewster to Seaton of 1768 and the subsequent conveyances, supported by open and notorious acts of possession and claim of ownership, are sufficient evidence to warrant the presumption of a grant from the crown or town trustees if they had title under the colonial patents. (Angell on Tide-waters, 271, 280, 283, 286; *Palmer* v. *Hicks*, 6 Johns. 133, 134; Gould on Waters, §§ 21, 22, 25, 33; 4 Greenl. Cruise, 342; 268, § 47; *Coleman* v. *Man. Co.*, 94 N. Y. 229; *Dawley* v.

*Brown,* 79 id. 390.) All the facts necessary to support an action by a riparian owner to compel the removal of a structure erected between high and low-water line are set forth in the complaint, and if the plaintiffs have no title to the *locus,* the action may be treated as one by a riparian owner to compel the removal of a structure in front of his premises. (*Clement* v. *Burns,* 43 N. H. 609, 617, 620; *E. Haven* v. *Hemmingway,* 7 Conn. 186, 202, 203; *Gould* v. *H. R. R. R. Co.,* 6 N. Y. 522; *People* v. *Tibbits,* 19 id. 523; *Stevens* v. *Patterson,* 5 Vroom. 532.) The sovereign of the state is the source of title to all property. As to the land, other than the soil under navigable waters, or the navigable waters, the title is absolute and might be granted at pleasure; as to the soil under navigable waters, and the navigable waters, the title was of a twofold nature; as to the soil a proprietary title in trust for the people; as to the waters, a title which pertained to the sovereignty alone and could not be aliened. (*Gould* v. *H. R. R. R. Co.,* 6 N. Y. 546–549; *Smith* v. *City of Rochester,* 92 id. 463, 478; *Martin* v. *Wardell,* 16 Pet. 368, 414; *Com.* v. *Charleston,* 1 Pick. 180; *Goodwin* v. *Thompson,* 54 Am. R. 410; Gould on Waters, §§ 17, 24; *Hone* v. *Richards,* 4 Call. [Va.] 441; *Norfolk* v. *Cook,* 27 Gratt. 43; *Stover* v. *Freeman,* 6 Mass. 435; *Sale* v. *Pratt,* 19 Pick. 191; *Pollard* v. *Hogan,* 3 How. [U. S.] 212, 228; *Langdon* v. *Mayor, etc.,* 93 N. Y. 128, 155.) In the construction of patents from the colonial government to local communities, it was uniformly held that words similar to those used in the patent to the Duke of York, such rivers, harbors, waters, etc., did not transfer the title of the crown thereto or to the soil, but only civil or criminal jurisdiction thereover. (Gould, on Waters, §§ 30, 35; *Canal Com'rs* v. *People,* 5 Wend. 460–463, *Martin* v. *Wardell, supra; People* v. *Canal Apprs.* 33 N. Y. 460, 475, 500; *Mahler* v. *Norwich Co.,* 35 id. 352, 360; Laws of 1847, chap. 115: Laws of 1852, chap. 285; Gerard's Water Rights, 51–56, 223, 276, 284; Laws of 1835, chap. 232; Laws of 1850, chap. 232, § 2; Laws of 1856, p. 216; Laws of 1871, chap. 253.) The use of the shore as a place of landing by the inhabitants

is not sufficient to establish a landing place or the presumption of a grant by the riparian owner. (*Pearsall* v. *Post*, 20 Wend. 111, 122, 132, 133 ; *S. C.*, 22 id. 425 ; Angell on Tide Waters, 181 ; *Green* v. *Chelsea*, 24 Pick. 33 ; *Cooper* v. *Smith*, 9 Serg. & R. 71.) If, however, a dedication can be presumed, the mode in which it has been used cannot be changed without the consent of the owner. (Angell on Tide Waters, 194 ; Angell on Water Courses, § 144 ; *Emmons* v. *Turnbull*, 2 Johns. 313 ; *Cortelyou* v. *Van Brunt*, id. 357 ; Washburn on Easements, §§ 117, 370 ; *Post* v. *Pearsall*, 22 Wend. 425, 434, 438, 447, 450, 451, 455 ; Gould on Waters, § 193.) The legislature even could not authorize the erection of the bridge, and an act condemning lands for such use would be unconstitutional. (*In re Eureka Co.*, 96 N. Y. 42.) The ancestor of plaintiffs did not lose his title to the bed of the road in consequence of the dedication or the laying out and recording of the highway. (*Gidney* v. *Earl*, 12 Wend. 98.) It was competent to show the claim of title to the meadow, and that an action was brought to maintain the title, and that, at least, one of the defendants knew of it. (*Trustees* v. *Kirk*, 68 N. Y. 465.) The colonial patents of 1666 and 1668 were not grants of land, and if construed as grants of land, they did not grant the navigable waters within the town limits or the soil thereunder. (1 Bancroft [Protest of Mass. Colonists], 226, 271, 373, 498, 523 ; 2 Brodhead's Hist. N. Y. 109 ; Wood's Hist. L. Island, 9, 13, 14, 73 ; Duke of York's Laws [1664], 354 ; Report Gov. Hunter in 1716 ; 5 Doc. relating to Col. Hist. N. Y. 411 ; Opinion Att'y Gen. Colden ; 1 Doc. Hist. N. Y. [1732], 250 ; Kent's Charters, notes 4, 6, 12, p. 208; § 1, p. 61–64 ; note 14, p. 212, 140, 142 ; § 36, note 67, p. 266 ; 1 Hoffman's Corp. 28, § 6, p. 34 ; 1 Hoffman's Treatise on Corp. as Proprietor, 78, 284 ; *People* v. *Vanderbilt*, 26 N. Y. 287 ; 28 id. 396 ; *Orr* v. *Brooklyn*, 36 id. 661 ; 4 Greenl. Cruise, tit. D., 343, 268 ; *Jackson* v. *Halstead*, 5 Cow. 216 ; *Dermot* v. *State*, 99 N. Y. 101, 107 ; *Langdon* v. *Mayor, etc.*, 93 id. 129, 146, 148.)

Andrews, J. The judgment requires the defendants to remove the wharf and bridge erected by them, from the upland on the southerly side of Setauket harbor, and also from that part of the shore adjacent to the upland, between high-water mark, and the northerly line of land described in a deed executed in 1768, by one Seaton, under which plaintiffs claim. The judgment rests upon the finding that the plaintiffs are the owners of the upland and of the adjacent shore up to the line in the Seaton deed.

The plaintiffs, on the trial, rested their case upon the claim that they had the legal title to the upland and the shore, and that the erections of the defendants were an invasion of their right of property in the soil. If the plaintiffs own the upland, but not the shore, the judgment is too broad; and if they have title neither to the upland nor the shore, they were not, upon any facts appearing in the record, entitled to any relief. The plaintiffs rely upon two claims of title, (1), what is termed "the homestead title," and, (2), their title under the Seaton deed. It is conceded that Richard Floyd, the ancestor of the plaintiffs, settled upon a tract of about fifty acres of land, situate on Setauket harbor, in the present town of Brookhaven, more than two centuries ago, and that this tract, called the homestead, has ever since remained in possession of his descendants. The origin of his title is not shown. The plaintiffs offered and read in evidence, under objection, an extract from Thompson's History of Long Island, with a view of establishing that Richard Floyd's possession ante-dated the Nicolls patent of 1666. This evidence was incompetent. (*McKinnon* v. *Bliss*, 21 N. Y. 206 ; 1 Greenl. on Ev. § 497.) They also proved a tradition that the Floyds came to this country about 1646, and afterwards settled on Setauket harbor, but in what year there is no definite proof. On a new trial the requisite evidence may be given. The point is material upon the question whether the homestead lot was bounded on the north by the water. If Richard Floyd's possesion ante-dated the Nicolls patent, there would be a strong presumption that his title, however derived, extended

to high-water mark. The fifty acres is adjacent to the harbor, and in the absence of evidence to the contrary, it could not be supposed that the persons from whom Richard Floyd derived title, reserved a strip a few rods wide along the shore, thereby cutting him off from access to the water over his own land. There is no evidence of any such reservation in titles acquired prior to the Nicolls patent, and the Duke of York's laws, enacted in 1665, the year preceding the granting of the patent, confirmed the title of the then settlers to the lands in their possession. If, however, the possession of Richard Floyd, the ancestor, originated after the Nicolls patent, and his title is derived thereunder, then it seems probable that the cliff was the boundary on the water side, leaving a strip of land along the shore above high-water mark which was reserved for common use. It seems to have been the practice of the towns of Long Island to to make this reservation in the allotment of common lands held under patents from the colonial government. (See *Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459.) The defendants, in confirmation of the claim that the practice prevailed in respect to allotments of the common lands of the town of Brookhaven, produced the ancient town records of the town, from which it appears that at a meeting of the trustees, February 5, 1755, it was voted and agreed that " ye lots that were laid out on the sound and harbors, were designed to extend to ye bottom of ye cliffs against ye said lots," and it also appears from the same records that Col. Richard Floyd, then the owner of the homestead tract, was, during that year, one of the trustees of the town.

But passing this question, which, by evidence on a new trial may be freed from obscurity, and assuming that the plaintiffs' boundary of the upland extends to high-water mark, we are of opinion that they failed to establish title to any part of the shore over which the bridge was built, or any injury to their rights as riparian owners which entitled them to a judgment requiring the defendants to remove that part of the bridge extending below high-water mark to the line of the Seaton deed The construction of the patent granted by Governor Nicolls

in 1666, to the trustees and freeholders of the town of Brook-
haven, and of the confirmatory patent of Governor Dongan,
granted in 1686, was elaborately considered by this court in
the case of the *Trustees of Brookhaven* v. *Strong* (60 N. Y.
56). It was held in that case that by virtue of these patents
and the confirmation thereof by the colonial legislature, the
town was vested with the title to the lands under the waters
of the bays and harbors included within the boundaries of the
patent, as well as to the uplands not already the subject of
private ownership. The grant under these patents was in
trust for the use of the inhabitants of the town. It is well
known that titles to large tracts of land in various towns of
Long Island are held under similar patents. The uplands
have, to a great extent, by grants from the towns, become the
subject of private property. The public trust has been
subserved by grants to individuals in severalty, the towns
receiving the consideration. The title to the soil under navi-
gable waters vested in the Long Island towns under the
colonial patents was, undoubtedly, subject to the public right
of navigation, and it would seem to follow that the towns
could not alienate the title so acquired to the material preju-
dice of the common right. But whatever limitations may
have been imposed upon the title of the town of Brookhaven
for the protection of the public in the use of navigable waters,
it is no longer an open question that the colonial patents to the
Long Island towns vested in the towns the legal title to the
soil under the waters of the bays and harbors within the bounds
of the patents. (*Gould* v. *James*, 6 Cow. 369; *Rogers* v.
*Jones*, 1 Wend. 237; *Trustees of Brookhaven* v. *Strong*,
60 N. Y. 56; *Hand* v. *Newton*, 92 id. 88; *Robins* v.
*Ackerly*, 91 id. 98; *Mayor, etc.* v. *Hart*, 95 id. 451.)
The plaintiffs, therefore, who assert a title to that part of
the shore of Setauket harbor, on which the bridge is erected,
are met in the first instance by the fact that the title was
originally in the town. They have no standing until they
establish that the title of the town has been divested, and has
been acquired by them. They do not show any deed from

the town, or any agreement or writing on the part of the town recognizing their title or that of the grantors. They proved a deed from Joseph Brewster to Andrew Seaton, dated June 21, 1768, which purports to convey "a certain piece of salt thatch," by lines which include the *locus in quo*, and they trace their record title from this source. In addition, they proved that from time to time the grantees, under the Seaton deed, cut the salt thatch growing on the premises, and that one of them for several years leased to one Rogers the right to cut the thatch, and some other circumstances of a like nature. There is no proof that the town in any way recognized any title in Seaton or his grantees to the shore, nor, indeed, is there any evidence that the town had any notice of the deed. It was never recorded, nor was there any recorded conveyance describing these premises in the whole chain of title under the Seaton deed until 1866, a century after that deed was executed. What title, if any, Brewster had is not disclosed, and the evidence falls far short of establishing a title in his grantees by adverse possession. The premises embraced in the deed were never inclosed, but remained open, subject without obstruction, to the ebb and flow of the tide and to the uses of a public landing place. The trustees of the town, after the execution of the Seaton deed and down to the time of the commencement of this action, exercised jurisdiction over the part of the shore in question, and from time to time granted privileges wholly inconsistent with the claim of title made by the plaintiffs. Assuming that the town was cognizant of the acts of Seaton or his grantees in cutting the thatch, and that they claimed an exclusive right, and acquiesced therein, this, at most, would give them a prescriptive right, as against the town, to take the thatch, without conferring a title to the soil, which would be unnecessary to the enjoyment of the right. In other words, a title in fee would not be implied from user where an easement only would secure the privilege enjoyed. (See Hale on Sea Shore, 217; Gould on Waters, § 22.) The prescriptive right acquired, if any, was analogous to a *profit a prendre*, appurtenant to some particular estate, and it may

be doubtful whether it could be granted alone, or could exist severed from the estate to which it was attached. (See COWEN, J., in *Pearsall* v. *Post*, 20 Wend. 123; *Waters* v. *Lilley*, 4 Pick. 145; *Perley* v. *Langley*, 7 N. H. 233; 2 Green Ev. 540; Angell on Tide Waters, 272; Gould on Waters, § 25.) We think the plaintiffs failed to establish a title to the shore of the bay, and that there is no evidence that the title of the town under the Nicolls patent has been divested.

It is not material to inquire whether the grant of the right to construct a bridge over the bay, made by the trustees of the town to the defendants in 1878, was valid. If the construction of the bridge over the waters of the shore is an unlawful obstruction to navigation, the wrong may be redressed by appropriate proceedings in behalf of the public. It does not appear that the plaintiffs have suffered any special injury, and upon the facts proved they have no standing to maintain an action for the removal of the bridge, in the absence of legal title to the soil. (*Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44.)

The judgment should be reversed, and a new trial granted. All concur.

Judgment reversed.