TALLMADGE A. LAMBERT *vs.* JOHN A. STEES and others, Executors.

August 24, 1891.

**Adverse Possession—Evidence.**—Evidence considered, and *held* not to require a finding that, during a specified time, a party was in adverse possession of real estate.

**Entry of Land by Agent, in his Own Name, with Land-Warrant of Principal.**—Evidence considered, and *held* to require a finding that the entry of land in the United States land-office with a military land-warrant, by one David Lambert, though made in his own name, was made with a land-warrant belonging to Andrew Bell Patterson, who had left it with him as his agent to enter land with it.

Appeal by the executors of the last will of Washington M. Stees, the original defendant, from an order of the district court for Ramsey county, refusing a new trial after a trial before *Brill, J.,* and judgment ordered for plaintiff. The action was brought May 24, 1887.

*Eller & How* and *Davis, Kellogg & Severance,* for appellants.

*Davenport & Thian, C. D. & T. D. O'Brien, I. V. D. Heard,* and *J. D. O'Brien,* for respondent.

GILFILLAN, C. J. Ejectment to recover lot No. 6, and the southwest quarter of the southeast quarter of section 21, and the west half of the northeast quarter of section 28, in township 29 north, of range 22 west, brought by plaintiff as the heir-at-law of David Lambert. The history of the legal title is as follows: October 17, 1849, David Lambert located the land with a United States military land-warrant, and January 10, 1851, the patent to him issued. Early in November, 1849, David Lambert died intestate, leaving plaintiff his only heir. To defeat the legal title thus devolving on plaintiff, the defendants set up—*First,* that David Lambert located the land (though in his own name) as the agent and trustee of, and with a land-warrant belonging to, Andrew Bell Patterson, from whom defendants derive title,—in other words, they allege a resulting trust in favor of Patterson; *second,* that such resulting trust, and the facts on which it was based, were established and adjudged by the probate court of Ramsey county, in which county the land lay, in a pro-

ceeding had in the matter of the administration of the estate of David Lambert, about February 1, 1850; *third*, the statute of limitations or adverse possession for more than 20 years. The court below, after a trial without a jury, found the facts against the defendants, and directed judgment for the plaintiff. The appeal is from an order denying a new trial.

On the trial the defendants introduced in evidence deeds purporting to convey the property from the administratrix of David Lambert to Andrew Bell Patterson; from the latter to Henry A. Lambert; from him to Allen Pierce; from him to Frederick A. W. Davis; and from him to the defendants' testate, Washington M. Stees. The court below finds that the last grantee went into actual, exclusive, and open possession in August or September, 1867, claiming to be the owner, and continued so in possession till the action was commenced, on May 24, 1887, and that until said Stees went into possession the land was vacant and unoccupied. The adverse possession thus found was a few months short of the 20 years requisite to bar plaintiff's action.

Error is assigned upon the finding as to the possession prior to August or September, 1867, as contrary to the evidence. The evidence of acts of possession prior to that date was that, in 1864, the agent of Davis, the then owner, and Stees, made an arrangement by which the latter was to take charge of the land, and for his services in so doing was to have the cutting of the hay on the meadow part, and pursuant to that he cut each year till 1867, when Davis conveyed to him, from seven to twelve tons of hay, let his cattle roam over and pasture upon the land, which was wholly uninclosed, just as they roamed over and pastured upon adjacent uninclosed lands, and prevented people from cutting and stealing the wood on the land whenever they attempted it, though how frequently that occurred does not appear. This evidence did not require a finding by the court of possession, actual, open, distinct, notorious, exclusive, and continuous, such as is requisite to constitute adverse possession. A finding to the contrary, upon evidence of similar acts, such as annually cutting hay, was sustained in *Bazille* v. *Murray*, 40 Minn. 48, (41 N. W. Rep. 238.) The case is distinguishable from *Costello*

*v. Edson,* 44 Minn. 135, (46 N. W. Rep. 299,) where there were only occasional entries upon the land, in this: that the acts done upon the land in that case were such as to indicate and serve as notice of an intention to appropriate the land itself, and not the mere products of it, to the dominion and use of the party entering, being acts of permanent improvement.

The view taken by the majority of the court as to the evidence upon the issues that the land-warrant with which the land was entered belonged to Patterson, and that Lambert was his agent to enter the land with it, and that he entered it as such agent, though in his own name, and of the findings of the court below thereon, renders it unnecessary for us to consider the questions of law resting upon the proceedings in the probate court, or the admissibility of evidence of the declarations of Andrew Bell Patterson just before he came to St. Paul, in 1849, as to his purpose in coming here.

The evidence shows that David Lambert came to St. Paul in the year 1848, and engaged in the practice of the law, and in the "land business," and so continued to the time of his death in November, 1849; that Patterson came here in July or August, 1849, where about that time, in Lambert's office, John J. Dewey was introduced to him. Dewey testified that at that meeting there was some conversation about establishing here an Episcopalian church, Patterson being a minister, Lambert a member of, and Dewey interested in, that church; and also some conversation about Patterson investing in real estate here, in the course of which conversation Patterson said he had some land-warrants that he wanted to locate on lands that would be likely to rise in value. This conversation appears to have been in the presence of Lambert. Dewey further testified that after this conversation, and some time in August, Lambert told him Patterson had left with him some warrants to locate, and asked him where he thought would be the best place to locate them, and the witness told him that most of the lands in range 23, township 29, had been taken up; but that, if he would go around in the neighborhood of Lake Phalen, he would find some location; that in range 22 they were not taken up so much. He also testified that he went with Lambert, and looked over lands in range

22, in the vicinity of the foot of Lake Phalen, (not the lands here in controversy, which also lie near the foot of that lake.) C. P. V. Lull testified that in 1849 he met Lambert and Patterson together, and the latter told him he had, or was going to have, some land-warrants, and wanted to get some lands; that afterwards, during the session of the legislature, which met in St. Paul in September, and continued for 60 days, Lambert went to Stillwater, where the land-office then was, and told witness he was going there to locate some land-warrants, and showed him two or three land-warrants; told him he had got the land-warrants from Patterson, and was going to Stillwater to locate them. John C. Terry testified that after he came here, which was in September, 1849, he was at the office or residence of David Lambert, and heard a conversation between him and his brother, Henry A. Lambert, in which some land-warrants were spoken of as the Patterson land-warrants or warrant; that they were to be or had been located, and he thought the vicinity of Lake Phalen was mentioned as the place.

It appears that David Lambert, on October 17, 1849, entered in his own name at the land-office of the district on lands near Lake Phalen, including the lands here in controversy, three land-warrants, upon which patents afterwards issued, and it did not appear that he ever located any other warrants; that from the opening of the land-office till several years after Lambert's death no land-warrants were entered at that office in the name of Patterson.

There was no evidence, direct or indirect, to contradict, or in any way to impair, the force of the testimony above recited. There is also the additional fact, entitled to be considered in such a case, that for nearly 38 years after the transaction, during more than one-half of which time a claimant under Patterson was in actual, exclusive, and open possession of the land located by one of the three warrants, no claim under Lambert was ever made.

The majority of the court are of opinion that the foregoing evidence required a finding by the trial court that the land-warrant with which the land in controversy was entered was the property of Andrew Bell Patterson, that he left it with David Lambert as his agent to enter land with it for him, and that when making the entry Lam-

bert was his agent for that purpose, and that the court erred in not finding such to be the facts. In my opinion, in which Justice Vanderburgh concurs, while the evidence would have fully justified the trial court in finding that such were the facts, it is not so clear, un-questionable, and convincing that under the rule of decision in this court we can say it was error in the court to find the contrary.

At the time of the transaction the rule of the common law in regard to resulting trusts was in force.

Order reversed, and a new trial ordered.