#### Staunton.

## WHEALTON & WISHERD V. DOUGHTY.

### September 14, 1911.

1. RIPARIAN OWNERS—*Title to Low Water Mark*—"*Guts.*"—The bounds of every man's land lying on the seaboard is extended by statute (Code, section 1339) to ordinary low water mark, and a drain or gut which goes bare at ordinary low water does not cut off or prevent the extension of such line, but the same is continued across and beyond such stream down to ordinary low water mark.

2. ADVERSE POSSESSION—*Color of Title—Boundaries—Marsh Lands.* The possession of highland under a deed conveying the same cannot be extended so as to embrace marsh land on the seashore not adjacent to the highland, where neither in the deed conveying the highland, nor in any other paper under which title is claimed, is there a description of boundaries which embraces or includes the marsh land.

3. DEEDS—*Description of Premises.*—A deed of conveyance, to be effective as evidence of title, must, either in terms or by reference to other designation, give such description of the subject matter intended to be conveyed as will be sufficient to identify the same with reasonable certainty.

4. ADVERSE POSSESSION—*Constructive Possession—Limits Claimed—Boundaries.*—Where a plaintiff or defendant in ejectment is, upon reasonable grounds, contending that the land in controversy is within the description of the boundaries given in his title papers, then what is the whole is to be determined by the limits owned or claimed, but this is not true where the limits claimed are outside the boundaries described in the claimant's title papers, or of his actual possession.

5. ADVERSE POSSESSION—*Wild and Uncultivated Lands.*—Wild and uncultivated lands cannot be made the subject of adversary possession while they remain completely in a state of nature. A change in their condition, to some extent, is essential.

6. ADVERSE POSSESSION—*Acts of Ownership—Marsh Lands.*—If title by adverse possession can be acquired of marsh lands on the seashore, separate and distinct from the rights of the riparian owner, the mere fact that the adverse claimant and his predecessors in title permitted their cattle to roam over said marshes

82

when not covered by water, just as they roamed over adjacent marsh lands, and that they cut grass from the marsh lands and hauled it away for use as manure on their highlands, does not constitute such actual possession as will deprive the true owner of his title.

7. EVIDENCE—*Admissions—Estoppel.*—The fact that a predecessor in title of the defendant did not claim title to the land in controversy, but in fact acknowledged that he was not the owner of it, and disclaimed title to it, is competent evidence to be considered by the jury along with other evidence, in determining who is the true owner, but does not estop the defendant from claiming to the true boundaries.

8. RIPARIAN OWNERS—*Boundaries—Presumption.*—If the dividing line between the highlands of adjacent owners on the seaboard is a straight line for some distance before it reaches high water mark, the law continues such line in the same course to low water mark, and the burden is on the one alleging it to show that it has been changed below high water mark.

Error to a judgment of the Circuit Court of Northampton county in an action of ejectment. Judgment for the plaintiff. Defendant assigns error.

.                                                        *Reversed.*

The opinion states the case. Instructions C and D, given for the plaintiff, and 7, 8 and 10 asked by defendant and refused, (and referred to in the opinion of the court) are as follows:

Instruction C: "The court instructs the jury that if they believe from the evidence that Mrs. Willietta Doughty, by virtue of partition deed with James P. Fitchett, entered upon the land in controversy, improving and cultivating a part and claimed title to the whole, she was in actual possession of the whole land within the boundaries and what is the whole is to be determined by the limits owned or claimed."

Instruction D: "The court instructs the jury that if they believe from the evidence that Edward T. Nottingham, the grantor of Marion Scott, did not claim title to the land in

question, but acknowledged the same to be in the owner of the land, at present owned by Mrs. Doughty, then they must find for the plaintiff, unless they further believe from the evidence that Marion Scott has been in open, notorious and continuous possession thereof, claiming *bona fide* title thereto for more than fifteen years prior to the institution of this suit."

Instruction 7: "The court instructs the jury that by statute the bounds of every man's land lying on the seaboard is extended to ordinary low water mark, and that a drain or gut which goes bare at ordinary low water does not cut off or prevent the extension of such line, but the same is continued across and beyond such stream down to ordinary low water mark."

Instruction 8: "The court instructs the jury that if they believe from the evidence that the division line between the upland of the plaintiff, Willietta Doughty, and those under whom she claims, and the upland of the defendant and those under whom he claims, is a straight line for some distance before it reaches high water mark, then the law continues such line in the same course to low water mark, and, if the course of such line has been changed below high water mark, the burden is upon the plaintiff to show it, but in deciding this question the jury should consider all the evidence heard in the case."

Instruction 10: "The court instructs the jury that the opinion or supposition or verbal declaration of E. T. Nottingham, through whom defendants claim, as to where his true lines were, cannot stop those claiming under him from claiming to the true boundaries, yet the jury may consider any such declaration as evidence to show what was the true boundary of the lands of defendants."

*Otho F. Mears* and *Kendall & Daniel,* for the plaintiffs in error.

*John E. Nottingham, Jr.,* and *Ben T. Gunter,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Mrs. Willietta Doughty instituted this action of ejectment against J. H. Whealton and D. N. Wisherd, partners trading as Whealton & Wisherd, and lessees of Marion Scott, to recover the possession of certain marsh land described in the declaration. Upon the trial of the cause there was a verdict and judgment in favor of the plaintiff for the 187½ acres of land sued for and $125.00 damages on account of its detention. To that judgment this writ of error was awarded.

It appears that Marion Scott and defendant in error are the owners of adjoining farms in Northampton county, facing to the east on what is commonly known and designated as the "Broadwater," which covers at high tide the marshes lying between the highland and the ocean, a distance of about eight miles; that under a lease from Scott, dated February 27, 1907, plaintiffs in error entered upon the marsh lying to the east of the highland belonging to their lessor, for the purpose of planting and propagating oysters thereon; that through said marshes, of which the 187½ acres in dispute here is a part, more remote from the highland deep channels run, one of which is referred to in the old deeds in evidence as "the river running down the peninsular," or "the river running along the seaside"; but near the highland a great number of drains, or as locally designated, "guts," run in irregular courses through the marshes; and that plaintiff in error's lessor, Marion Scott, claims the disputed marsh as a part of his farm by reason of his riparian rights, while defendant in error asserts title to and possession thereof, not only by reason of her riparian rights, but by adversary possession, for the statutory period, under a claim of right thereto.

Defendant in error claims title to her farm through a deed of partition made between her and her brother, James P. Fitchett on August 27, 1891, the land partitioned being described as "containing by estimate two hundred and fifty acres (250 a.), be the same, however, more or less, and bounded on the north by the lands of the heirs of Thomas E. Brickhouse; on the east by the Atlantic Ocean; on the south by the lands of the heirs of Edward T. Nottingham, and on the west by the lands of the heirs of John Walter Williams and James L. Nottingham, respectively"; and Marion Scott is the owner of the land formerly owned by the heirs of Edward T. Nottingham, referred to in said partition deed, his title thereto being undisputed in this case.

The boundary line between the Scott farm and that of defendant in error, marked by trees and a ditch, runs from a county road in an easterly direction until it reaches the marsh land in dispute, lying in front and to the east of the farm of Scott and south of what would be a prolongation of the boundary line between the highland of his farm and that of defendant in error; and the disputed marsh land is bounded on the north by said prolongated line, on the east by the "Broadwater," on the south by Magothy bay, and on the west by that part of Scott's farm conceded to be his. Along the east boundary of Scott's highland separating it from the marsh is a "gut" or channel which "heads up" from Magothy bay to or beyond the point at which the line which separates the highland of Scott and that of defendant in error reaches the "gut," and along the line separating the highlands of the two farms there is a puncheon fence for a short distance extending to the water in the "gut," put there some years ago for the purpose, it is claimed, so to inclose the marsh land as to keep off the stock of the adjoining land owner and to enable defendant in error to use and enjoy the marsh in question as a pasture for her own

cattle. All of this marsh in dispute is covered with water at high tide, and it is not claimed that defendant in error's highland extends to the north of it, nor is there in the partition deed mentioned, or any other deed or paper writing in evidence under which she claims, a description of boundaries by which the 187½ acres of disputed marsh could be located. If, therefore, the "gut" or channel mentioned, which "heads up" from Magothy bay to or beyond the point at which the line dividing the highlands of Scott and the defendant in error, ebbs dry for an appreciable distance south of said division line, the marsh in dispute belongs to Scott by virtue of the statute of 1679, now section 1339, Code of 1904, unless he and those under whom he claims have lost the right thereto by an adversary possession thereof for the statutory period of limitation. *French* v. *Bankhead,* 11 Gratt. 160; *Groner* v. *Foster,* 94 Va. 650, 27 S. E. 493; *Waverley, &c. Co.* v. *White,* 97 Va. 176, 33 S. E. 534, 45 L. R. A. 227.

The giving by the trial court to the jury of instructions "A," "B," "C" and "D" for defendant in error, and the refusal to give instructions 7, 8, 9 and 10, asked by plaintiffs in error, is assigned as error.

Instruction "A" is as follows: "The court instructs the jury that if they believe from the evidence that the plaintiff, Mrs. Willietta Doughty, was in actual possession of the land in controversy and claimed title thereto by virtue of deed of partition with James P. Fitchett, and the defendants in this action entered and took possession of any part of the said premises within fifteen years next preceding the institution of this action, then they should find for the plaintiff, unless they should further find that the defendants are the true owners of said land or were authorized by the true owner to enter thereon, and the burden is on the defendants to prove by a clear preponderance of evidence that they are the owners or were authorized by the true owner to so enter."

The instruction is not amenable to the objection that it assumes adversary possession of the disputed marsh in defendant in error claiming title thereto by virtue of her deed of partition with James P. Fitchett when plaintiffs in error entered and took possession of a part of the premises, but the instruction did erroneously divert the attention of the jury to the question of adversary possession in defendant in error under a claim of right, without evidence upon which to base it. The possession of defendant in error of her highland by virtue of said partition deed could not thereby be extended so as to embrace the disputed marsh, since neither in this partition deed nor in any other paper or papers offered in evidence under which she claims is there a description of boundaries which embraces or includes the disputed marsh.

"Where the claimant of title relies upon a deed of conveyance, it is well settled both by reason and authority that in order to be effective as evidence of title it must either in terms or by reference to other designation give such description of the subject matter intended to be conveyed as will be sufficient to identify the same with reasonable certainty." Warville on Ejectment, sec. 295.

The words, "what is the whole is to be determined by the limits owned or claimed," used in instruction "C," would be unobjectionable in a proper case, as where a plaintiff or a defendant in an ejectment proceeding was, upon reasonable grounds, contending that the land in controversy was within the description of boundaries given in his title papers, but to say that what is the whole of defendant's land is to be determined by the limits claimed, though those limits are outside the boundaries described in his title papers or of his actual possession finds no sanction either in reason or authority. These words quoted from instruction "C" were taken doubtless from the case of *Taylor* v. *Burnsides*, 1 Gratt. 191, and sanctioned in many other cases

where the evidence warranted it; but as the opinion of the court in the case named shows, the possession of the apparent owner of land who holds under *color of title,* having possession of part, like that of the real owner, extends to the bounds of the lands embraced in his title papers, while the possession of the intruder can extend no farther than his actual occupancy.

In this case it is conceded that "wild and uncultivated lands cannot be made the subject of adversary possession while they remain completely in a state of nature." A change in their condition, to some extent, is essential. *City of Richmond* v. *Jones,* 111 Va. 214, 68 S. E. 181; *Harman* v. *Ratcliff,* 93 Va. 249, 24 S. E. 1023; *Turpin* v. *Saunders,* 32 Gratt. 36.

In 1 Cyc., p. 990, it is said, that although there are some decisions apparently to the contrary, the weight of authority sustains the rule that the mere occasional cutting of timber on land is not alone such evidence of ownership as to amount to a possession adverse to the true owner, and the additional circumstances that the claimant . . . pastured his hogs or cattle there occasionally, or did other similar acts, will not constitute actual possession; and on p. 992 it is said that the occasional or periodical entry upon land to cut wild grass is not an act manifesting a purpose to take possession as owner, and does not constitute actual possession. Among the decided cases cited in support of the text just quoted is the case of *Lambert* v. *Stees,* 47 Minn. 141, 49 N. W. 662, where it is held that the fact that a person cuts hay on uninclosed land, lets his cattle roam over and pasture upon it just as they pasture on adjacent uninclosed lands, and prevents people from cutting and stealing wood on the land, is not sufficient to constitute adverse possession. See also *Wheeler* v. *Winn,* 53 Pa. 122, 91 Am. Dec. 186.

All the authorities agree that acts done upon land, requi-

site to constitute adverse possession, must be such as to
indicate and serve as notice of an intention to appropriate
the land itself, and not the mere products of it, to the domin-
ion and ownership of the party entering, being acts of per-
manent improvement.

The case of *Drake* v. *Curtis,* 1 Cush. (Mass.) 395, is au-
thority for the proposition that the ordinary presumptions
and conclusions of law, arising from possession and use,
can have no application in regard to open and uninclosed
flats; that the constant use of such flats by one not entitled
to claim or hold them as the riparian proprietor for the
ordinary purposes of navigation, can give no exclusive or
adversary possession.    In the opinion in that case by Shaw,
C. J., it is said: "The rule is simple, but is rendered compli-
cated and difficult of application by the infinitely diversified
forms which the seashore may present."

As we have seen, the marsh land in controversy in this
case is not within the descriptive boundaries of defendant
in error's title papers offered in evidence, and, therefore, if
she has title to the marsh it must be by reason of her ripa-
rian rights under the statute law of the State and not by
reason of a prescriptive right by virtue of the statute of
limitations.

In *Austin* v. *Minor,* 107 Va. 101, 57 S. E. 609, the prop-
erty in dispute was a marsh, valuable only for hunting,
fishing and trapping, and to a limited extent as a range
for hogs, one of the questions presented for decision being
whether the property was capable of such enjoyment as
accompanied by a claim or color of title would ultimately
ripen into a good title; and the opinion by Keith, P., says,
that if the tide ebbs and flows over this property it is doubt-
ful whether a title by adverse possession can be acquired
to it, separate and distinct from the rights of the riparian
owner.    *Rowe* v. *Strong,* 107 N. Y. 350, 14 N. E. 294.

The evidence in this case as to adversary possession in the

83

defendant in error of the disputed marsh is to the effect only, that her cattle and those of her predecessors in title had from time to time during many years roamed over the marsh when not covered with water at high tide, just as they roamed over other marsh lands adjoining, and that she and her predecessors in title had cut wild grass therefrom (how many times and at what intervals are not stated), and hauled it away for use as manure on the highland. This evidence did not call for or warrant the giving of instruction "A" with respect to the question of adversary possession, and, therefore, such an instruction had the tendency to divert the attention of, if not to mislead, the jury as to the true question for their consideration.

For the reasons already stated instruction "C," given for the defendant in error, was also erroneous and should not have been given.

Instruction "D" in the form in which it was offered should have been refused. The fact that Edward T. Nottingham, the grantor of Marion Scott, did not claim title to the land in question, but in fact acknowledged that he was not the owner of it and disclaimed title thereto was competent evidence to be considered by the jury along with the other evidence in determining who was the true owner, and was properly admitted for the consideration of the jury; and we think that instruction 10, asked for by the plaintiffs in error and refused by the court, should have been given, and that it sufficiently presents the law upon this aspect of the case. *Sutherland* v. *Emswiller,* 111 Va. 507, 69 S. E. 363.

The crucial question in the case is whether or not the "gut," drain or channel which "heads up" from Magothy bay to or beyond the line which divides the highlands of defendant in error and plaintiffs in error's lessor ebbs dry at ordinary low water for an appreciable distance from said line, and if the jury's finding from the evidence be that said "gut," drain or channel does so ebb dry, the law of the case

is as propounded in plaintiff in error's instructions 7 and 8, which were erroneously refused.   *Groner* v. *Foster, supra; Waverley, &c. Co.* v. *White, supra.*

As the judgment of the circuit court has to be reversed, the verdict of the jury set aside and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion, we deem it unnecessary to consider the other questions presented in the petition for this writ of error.

*Reversed.*