## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SCOTT V. DOUGHTY.

### January 16, 1919.

1. NEW TRIALS—*Number of Applications—Code of 1904, Section 3392—Code of 1919, Section 6260.*—The instant case had heretofore been twice before the Supreme Court of Appeals, and in each case a new trial was awarded the plaintiff in error. When the case was a third time brought before the Supreme Court of Appeals on a writ of error granted the plaintiff in error, the defendant in error moved to dismiss the writ under section 3392, Code of 1904, which declares that "not more than two new trials shall be granted to the same party in the same cause." The Supreme Court of Appeals held that, as the judgment of the trial court had to be affirmed on its merits, it was unnecessary to decide the question, and in the opinion of the court it is pointed out that "there is a further reason for not now passing upon the question. It will probably never arise again in this jurisdiction. In the Code of 1919, adopted by the last legislature, the language of this section has been changed so as to obviate the difficulties presented by the present statute. Section 6260 of the Code of 1919, so far as it relates to this subject, is as follows: 'Not more than two new trials shall be granted to the same party in the same cause on the ground that the verdict is contrary to the evidence, either by the trial court or the appellate court, or both.' "

2. WATERS AND WATERCOURSES—*Low Water—Verdict.*—In the instant case the crucial question was whether or not a certain "gut" or drain ebbed bare at ordinary low water for an appreciable distance from the dividing line between the parties, and the jury were instructed, if it did, to find for the defendant. The verdict in favor of the plaintiff, therefore, necessarily found that the "gut" or drain did not ebb bare at ordinary low water.

3. EXPERT AND OPINION EVIDENCE—*Competency of Witnesses—Low Water.*—In the instant case there was great conflict in the testimony as to ebb and flow of the tide in the "gut" or drain at ordinary low water mark, and it was the contention of the

plaintiff in error that none of the witnesses for defendant in error were qualified to testify on the subject because they were not shown to have sufficient knowledge on the subject of low water, within the meaning of section 1339 of the Code of 1904, extending boundaries to low-water mark. Many of the witnesses, indeed most of them, were familiar with tide waters and with tides. A number of them had spent their lives in fishing in tidewaters and in oystering, and expressed their knowledge of, and familiarity with, tides of all kinds, and were possessed of as much knowledge on the subject as could be gotten from many years of observation.

*Held:* That the witnesses were competent and there was abundance of evidence to support the verdict.

4. BOUNDARIES—*Low-Water Mark—Section 1339, Code of 1904.*—As used in section 1339, Code of 1904, the term "low-water mark" means ordinary low water, not spring-tide or neaptide, but normal, natural, usual, customary or ordinary low water, uninfluenced by special seasons, winds or other circumstances.

5. STATUTES—*Construction—Ordinary Words.*—In the construction of statutes, as of other writings, ordinary words are to be given their plain, ordinary meaning unless a different intent is in some way manifested.

6. EJECTMENT—*Title of Plaintiff.*—As a rule, subject to some exceptions as well established as the rule itself, the plaintiff in ejectment must recover, if at all, on the strength of his own title, and not upon the weakness of that of the defendant.

7. LAW OF THE CASE.—The rulings of the Supreme Court of Appeals upon a former hearing become the law of the case and are binding alike on the Supreme Court of Appeals and the trial court, and the Supreme Court of Appeals is not at liberty to question the soundness of such rulings.

8. VIEW—*Discretion of Court.*—In an action of ejectment involving title to marsh lands, the plaintiff in error asked for a view of the premises. The defendant in error, through her counsel, stated that while she did not ask for a view, she did not oppose it. The trial court refused to grant the view because it was of opinion "that the jury could not ascertain 'ordinary' low-water mark by one view; and also the result, if not the express object, of the view would be to *supply* evidence rather than to *apprehend* it."

*Held:* That there was no error in this ruling. It was a matter resting in the sound discretion of the trial court, and in the instant case the discretion was well exercised.

Error to a judgment of the Circuit Court of Northampton county, in an action of ejectment. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. E. Heath,* for the plaintiff in error.

*John E. Nottingham* and *Benj. T. Gunter,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

[1] This case has heretofore been twice before this court, and in each instance a new trial was awarded the plaintiff in error. *Whealton* v. *Doughty,* 112 Va. 649, 72 S. E. 112.; *Whealton & Wisherd* v. *Doughty,* 116 Va. 566, 82 S. E. 94. The case is now here for the third time on a writ of error granted the plaintiff in error, and the defendant moves to dismiss under the provisions of section 3392 of the Code, declaring that "not more than two new trials shall be granted to the same party in the same cause." This question came before this court in *Spriggs* v. *Jamerson,* 115 Va. 250, 78 S. E. 571, under circumstances very similar to those arising in this case, and it was held that, as the judgment of the trial court had to be affirmed on its merits, it was unnecessary to decide the question. Judge Buchanan, delivering the opinion of the court, pointed out the different constructions which had been placed upon similar statutes in other States, and arrived at the conclusion that, as there is much diversity of opinion in other jurisdictions as to the proper interpretation of the statute, this court will not undertake to construe it until a case arises in which it is necessary. In addition to the reason given by

Judge Buchanan, there is a further reason for not now pass-
ing upon the question. It will probably never arise again
in this jurisdiction. In the Code of 1919, adopted by the
last legislature, the language of this section has been
changed, so as to obviate the difficulties presented by the
present statute. Section 6260 of the Code of 1919, so far
as it relates to this subject, is as follows: "Not more than
two new trials shall be granted to the same party in the
same cause on the ground that the verdict is contrary to
the evidence, either by the trial court, or the appellate court,
or both."

It is stated in the petition for the writ of error in this
cause that the evidence was substantially the same in all
three trials. In the opinion delivered by Judge Cardwell
on the first writ of error, the case is stated as follows:

"Mrs. Willietta Doughty instituted this action of eject-
ment against J. H. Whealton and D. N. Wisherd, partners
trading as Whealton & Wisherd, and lessees of Marion
Scott, to recover the possession of certain marsh land de-
scribed in the declaration. Upon the trial of the cause
there was a verdict and judgment in favor of the plaintiff
for the 187 1-2 acres of land sued for and $125.00 dam-
ages on account of its detention. To that judgment this
writ of error was awarded.

"It appears that Marion Scott and defendant in error are
the owners of adjoining farms in Northampton county,
facing to the east on what is commonly known and desig-
nated as the 'Broadwater,' which covers at high tide the
marshes lying between the highland and the ocean, a dis-
tance of about eight miles; that under a lease from Scott,
dated February 27, 1907, plaintiffs in error entered upon
the marsh lying to the east of the highland belonging to
their lessor, for the purpose of planting and propagating
oysters thereon; that through said marshes, of which the
187 1-2 acres in dispute here is a part, more remote from

46

the highland deep channels run, one of which is referred
to in the old deeds as 'the river running down the penin-
sular,' or 'the river running along the seaside;' but near
the highland a great number of drains, or as locally desig-
nated, 'guts,' run in irregular courses through the marshes;
and that plaintiff in error's lessor, Marion Scott, claims
the disputed marsh as a part of his farm by reason of his
riparian rights, while defendant in error asserts title to
the possession thereof, not only by reason of her riparian
rights, but by adversary possession, for the statutory period,
under a claim of right thereto.

"Defendant in error claims title to her farm through
a deed of partition made between her and her brother,
James P. Fitchett, on August 27, 1891, the land partitioned
being described as 'containing by estimate two hundred and
fifty acres (250 a.), be the same, however, more or less, and
bounded on the north by the lands of the heirs of Thomas
E. Briskhouse; on the east by the Atlantic Ocean; on the
south by the lands of the heirs of John Walter Williams
and James L. Nottingham, respectively,' and Marion Scott
is the owner of the land formerly owned by the heirs of
Edward T. Nottingham, referred to in said partition deed,
his title thereto being undisputed in this case.

"The boundary line between the Scott farm and that of
the defendant in error, marked by trees and a ditch, runs
from a county road in an easterly direction until it reaches
the marsh land in dispute, lying in front and to the east
of the farm of Scott and south of what would be a prolonga-
tion of the boundary line between the highland of his farm
and that of the defendant in error; and the disputed marsh
land is bounded on the north by said prolongated line, on
the east by the 'Broadwater,' on the south by Magothy
bay, and on the west by that part of Scott's farm conceded
to be his. Along the east boundary of Scott's highland
separating it from the marsh is a 'gut' or channel which

'heads up' from Magothy bay to or beyond the point at which the line which separates the highland of Scott and that of defendant in error reaches the 'gut,' and along the line separating the highland of the two farms there is a puncheon fence for a short distance extending to the water in the 'gut,' put there some years ago for the purpose, it is claimed, so to inclose the marsh land as to keep off the stock of the adjoining landowner and to enable defendant in error to use and enjoy the marsh in question as a pasture for her own cattle. All of this marsh in dispute is covered with water at high tide, and it is not claimed that defendant in error's highland extends to the north of it, nor is there in the partition deed mentioned, or any other deed or paper writing in evidence under which she claims, a description of boundaries by which the 187 1-2 acres of disputed marsh could be located. If, therefore, the 'gut,' or channel mentioned which 'heads up' from Magothy bay to or beyond the point at which the line dividing the highlands of Scott and the defendant in error, ebbs dry for an appreciable distance south of said division line, the marsh in dispute belongs to Scott by virtue of the statute of 1679, now section 1339, Code of 1904, unless he and those under whom he claims have lost the right thereto by an adversary possession thereof for the statutory period of limitation."

On each of the former writs of error the judgment of the trail court was reversed because of errors in the instructions given to the jury. On the former writs of error, it was decided that Mrs. Doughty, the plaintiff below, did not have title to the marsh land in controversy by adverse possession, and that said land was not within the descriptive boundaries of her title papers, and the conclusion was deduced that if she had title it must be by virtue of her riparian rights under the statute law of the State. What those riparian rights were was not passed upon. The court adhered to the rule announced in *Groner* v. *Foster*,

94 Va. 650, 27 S. E. 493, that, in the absence of any direction in the statute to the contrary, the limits or boundaries of the high land at the high water mark, when extended to low water, are to be extended *in the same direction.* The former decisions also, in effect, held that the extended line stopped at the first low water encountered, although. that be in a gut or drain making up from the ocean, provided such gut or drain did not ebb bare at ordinary low water; and, on. the second hearing of the case, the court repeated and adhered to what it had said on the first hearing that "the crucial question in the case is whether or not the 'gut,' drain or channel which 'heads up' from Magothy bay to and beyond the line which divides the highlands of the defendant in error and plaintiffs in error's lessor ebbs bare at ordinary low water for an appreciable distance from said line, and if the jury's finding from the evidence be that said 'gut,' drain, or channel does so ebb dry," the law of the case is with the plaintiffs in error (defendants below) and the verdict of the jury should be in their favor. The necessary result of this holding is that if the "gut" or drain does ebb bare at ordinary low water, that is the end of the claim of Mrs. Doughty, the defendant in error, and if it does not ebb bare, that is the end of the claim of the plaintiff in error so far as title by virtue of the statute is concerned. This is conceded by the plaintiff in error. In his petition he says:

"In a sense, and undoubtedly in the sense in which Judge Cardwell intended it, the question as to whether or not the tide ebbs bare at the dividing line between the property of the defendant in error and that of your petitioner is a crucial one in this case. If it does ebb bare, then there is an end of the claim of the defendant in error. If it does not ebb bare, there is an end of the claim of your petitioner, so far as title by virtue of the statute is concerned."

It will be observed, however, in reading the former opinions in this case, that the riparian rights of Mrs. Doughty, the defendant in error, were not passed upon nor intended to be passed upon, for in the report of the case in 112 Va. at page 657, 72 S. E. 115, it is said: "As we have seen, the marsh land in controversy in this case is not within the descriptive boundaries of defendant in error's title papers offered in evidence, and, therefore, if she has title to the marsh it must be by reason of her riparian rights under the statute law of the State and not by reason of a prescriptive right by virtue of the statute of limitations."

In saying that the marsh land in controversy was not within the descriptive boundaries of defendant in error's title papers, it was not intended to define or restrict her riparian rights on the ocean side of her land growing out of irregularities or indentations in the ordinary low water line. The opinion expressly excepts such riparian rights.

[2] On the trial of the present case in the court below, the interest of the parties was centered on "the crucial question" of whether or not the "gut" or drain, "ebbs bare at ordinary low water for an appreciable distance" from the dividing line between the parties, and the jury were instructed, if it did, to find for the defendant. The verdict in favor of the plaintiff, therefore, necessarily found that the "gut" or drain did not ebb bare at ordinary low water. But it is insisted that there was no competent evidence in the case upon which to base the verdict, and, even if it is shown that Scott (the plaintiff in error) has no title, that does not vest title in Mrs. Doughty (the defendant in error), who could only recover in ejectment on the strength of her own title and not on the weakness of the title of the plaintiff in error.

[3, 4] There was great conflict in the testimony as to the ebb and flow of the tide in the "gut" or drain at or-

dinary low water. But the contention of the plaintiff in error is that none of the witnesses for Mrs. Doughty were qualified to testify on the subject because they were not shown to have sufficient knowledge on the subject of low water, within the meaning of section 1339 of the Code, extending boundaries to low-water mark. Many of the witnesses, indeed most of them, were familiar with tide waters and with tides. A number of them had spent their lives in fishing in tidewaters and in oystering, and expressed their knowledge of, and familiarity with, tides of all kinds, and were possesed of as much knowledge on the subject as could be gotten from many years of observation. No objection was made to their testimony when offered, no motion was thereafter made to strike it out, and so far as appears no such objection has heretofore been made, but is made here now for the first time. If the objection can now be made, it must be overruled as without merit. The term "low-water mark," used in the statute, means ordinary low water, not spring-tide or neap-tide, but normal, natural, usual, customary or ordinary low water, uninfluenced by special seasons, winds or other circumstances. In this sense, there was the greatest abundance of evidence to support the verdict.

[5, 6] In the construction of statutes, as of other writings, ordinary words are to be given their plain, ordinary meaning unless a different intent is in some way manifested. *Willis* v. *Kalmback,* 109 Va. 475, 64 S. E. 342, 21 L. R. A. (N. S.) 1009; *Saville* v. *Va. Ry. & P. Co.* 114 Va. 444, 76 S. E. 954.

It is true that, as a rule, subject to some exceptions as well established as the rule itself, the plaintiff in ejectment must recover, if at all, on the strength of his own title and not upon the weakness of that of the defendant, and we must, therefore, inquire into the title of the plaintiff below, the defendant in error here.

[7]    As we have seen, under the former holdings, Mrs.
Doughty (the plaintiff below) did not have title by adverse
possession, and the descriptive boundaries of herself and
of those under whom she claimed did not embrace the land
in controversy, and "if she had title to the marsh it must
be by reason of her riparian rights under the statute law."
No deed under which either she or the plaintiff in error
claimed made any mention of the gut or drain in contro-
versy, nor was her low-water line in any way described.
Her riparian rights were dependent on the location of this
low-water line.   This location it was held was to be deter-
mined by the ebb and flow of the tide, at low water, in
the gut or drain aforesaid.   Hence, it was said that the
crucial question was whether or not the gut or drain ebbed
bare at ordinary low water at the point where the dividing
line came to it.   It was further held that if it did ebb bare,
the dividing line would be extended across it out to the
Broadwater, and the land belonged to Scott, but it was
not expressly stated what the effect would be if the gut or
drain did not ebb bare at low water.   But it was neces-
sarily implied that if it did not ebb bare at its point of in-
tersection with the dividing line, then that point was a
corner on low water between the parties, just as it had
been ascertained to be by the processioners years ago, and
that the land in controversy belonged to Mrs. Doughty,
because she owned to low-water mark all the land lying
between her northern and southern corners on the sea-
shore, regardless of the curves, bends, or indentation of
the coast.   It was the view of the court that when Mrs.
Dougthy's southern corner was established, she was en-
titled as a riparian owner to follow low water on the side
next to her own land to the northern corner.   According
to the view of the plaintiff in error, the question which
had been decided to be crucial was wholly immaterial, for
if the gut or drain ebbed bare at low water, the land be-

longed to him under former decisions in the case, and if
it did not ebb bare he would still retain possession because
Mrs. Doughty had no sufficient title to maintain her action
of ejectment. So that, in either event, Scott would retain
the land. This was not the proper construction of the
former holdings of this court. The effect of such holdings
was that if the gut or drain ebbed bare at the point in-
dicated, the land belonged to Scott; if it did not, it belonged
to Mrs. Doughty. This was the construction placed upon
the former holdings by the trial court by instruction num-
ber 1, given for the plaintiff, and the finding of the jury
in accordance therewith cannot be disturbed. The former
holdings of this court on this question became the law of
the case, binding alike on this court and the trial court, and
we are not at liberty to question its soundness. *Steinman*
v. *Clinchfield Coal Corp.*, 121 Va. 611, 93 S. E. 684.

Under instruction number 1, given for the plaintiff
(defendant in error), the jury could not have found any
other verdict than the one found, and it is, therefore, un-
necessary to consider the rulings of the trial court on other
instructions. *Southern Ry. Co.* v. *Oliver*, 102 Va. 710, 47
S. E. 862.

[8] The plaintiff in error, Scott, asked for a view of
the premises. The defendant in error (Mrs. Doughty)
through her counsel, stated that while she did not ask for
a view, she did not oppose it. The trial court refused to
grant the view because it was of the opinion "that the
jury could not ascertain 'ordinary' low-water mark by one
view; and also the result, if not the express object, of the
view would be to *supply* evidence rather than to *apprehend*
it." There was no error in this ruling. It was a matter
resting in the sound discretion of the trial court, and in
this case the discretion was well exercised. On the subject
of views, see *Cutchin* v. *Roanoke,* 113 Va. 452, 74 S. E. 403;
*Norfolk* v. *Anthony,* 117 Va. 777, 787, 86 S. E. 68 and cases
cited.

Upon the principles announced in *Bradshaw* v. *Ashley,* 180 U. S. 59, 21 Sup. Ct. 297, 45 L. Ed. 423, and the criticism therein of *Greenleaf* v. *Brooklyn, etc. R. Co.,* 141 N. Y. 395, 36 N. E. 393, it is not clear that Mrs. Doughty did not have such possession as would have sustained her action against Scott, who, having no title, did not enter as owner, or by the authority of the owner, but upon this question we express no opinion.

Upon the whole case, we are of opinion that the judgment of the circuit court should be affirmed.

*Affirmed.*