THE NATIONAL COMMERCIAL BANK of Albany, Appellant, *v.* CHARLOTTE C. GRAY and Others, Respondents.

*Party wall — practical location of a boundary line — acquiescence — ancient writing — windows in a party wall.*

The rule which forbids the disturbance of a practical location of a boundary line which has been acquiesced in for a long series of years applies to the practical location of such a line through the center of a building wall, constituting it a party wall.

An agreement to that effect executed by the remote grantors of the adjoining owners, is admissible in evidence as an ancient writing although not acknowledged or recorded, where such location has been acquiesced in and the wall has been used as a party wall accordingly for a period of about seventy-five years, notwithstanding the fact that the wall may stand entirely within the line called for by the deed of one of the adjoining landowners. (MAYHAM, P. J., dissenting.)

In such a case, one adjoining landowner has a right to close window spaces inserted in the wall on its elevation above his building by the owner within whose deed line the wall stands.

When a wall is made a party wall by the establishment of a boundary line through its center, each owner owns in severalty so much of the wall as stands upon his lot, subject to the easement of the other owner for its support and the equal use thereof as an exterior wall of his building ; and no other use of the adjoining owner's portion of the party wall is permissible.

Windows have no place in a party wall.

APPEAL by the plaintiff, the National Commercial Bank of Albany, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of Albany county on the 16th day of April, 1891, upon a decision of the court rendered after a trial by the court at the Albany Special Term.

The action was brought to restrain the defendants from building with brick or otherwise in spaces left open for windows in the west-

erly wall of the building standing on the plaintiffs' premises, on the south side of State street, in the city of Albany, and from inserting or making any fastenings or connections with the wall, and from maintaining or continuing any fastenings or connections already made.

*Abraham Lansing*, for the appellant.

*Jacob H. Clute*, for the respondents.

PARKER, J.:

The controversy between plaintiff and defendants, who are adjoining lotowners, relates primarily to the location of a boundary line.

Defendants say that the line extends through the center of the wall, which has been for many years used in precisely the same manner as are party walls, the timbers of the building on either side resting in and being supported by it.

Plaintiff, admitting that defendant's user of the wall has been so long continued as to have created an easement which secures to him the right to such use as he now makes of the wall, insists that it is not a party wall, but wholly on the lands of the plaintiff, and for that reason it cannot be interfered with in any action it may see fit to take with reference to the wall, so long as defendants are not interfered with in the enjoyment of their easement.

It seems that prior to about 1850, plaintiff's building was three stories high and seventy-two feet deep. Defendant's building was three stories high also, but only about fifty feet deep. Sometime in 1850, plaintiff raised its building, running up the wall, which has been used as an easterly and westerly wall for plaintiff's and defendant's buildings respectively, to the requisite height, and inserted therein the beams for the added stories.

About the year 1874 the defendant extended his building so as to make its total depth seventy-two feet, and raised it so much that he was obliged to build up the wall between him and plaintiff to a height of about fifteen feet above where plaintiff had built it in 1850.

In 1887 plaintiff again raised its building, using the fifteen feet of wall which defendant had added in 1874, in part to support the

timbers of the added stories, and running up such wall about twenty feet more, making the top of the wall nearly twenty feet above the roof of defendant's building. In the erection of the wall, plaintiff left five spaces for windows. Defendant then closed such window spaces on his side, and for a depth of six inches, by brickwork.

Thereafter this action was begun to restrain the defendant from interfering with the window spaces, which resulted in a judgment for the defendant.

The determination of the learned trial judge seems well founded.

It is true that plaintiff's deed, assuming its westerly boundary line to be correctly located, calls for a frontage that included the entire wall, instead of one-half of it. And as there is no record of conveyance from plaintiff or his predecessors in title of the six inches in controversy, plaintiff insists that its right to it cannot be questioned.

Defendant's contention is that, in 1815, plaintiff's and defendant's predecessors in title located the boundary line in the "center of the brickwork of said wall," and that from that time until the commencement of this action, a period of about seventy-five years, such practical location of the line was acquiesced in by the parties to the original location and their grantees.

If it is legally established in the record before us that the facts are as defendant contends in such respect, then the case is clearly brought within the settled rule which forbids the disturbance of a practical location which has been acquiesced in for a long series of years — a rule adopted as one of repose, and which rests upon the same reason as the statute prohibiting the disturbance of an adverse possession which has continued for twenty years. (*Baldwin* v. *Brown*, 16 N. Y. 359; *Reed* v. *Farr*, 35 id. 113; *Avery* v. *Empire Woolen Co.*, 82 id. 582.)

We are thus brought to a consideration of the evidence introduced for the purpose of establishing a practical location.

The defendant put in evidence a writing under seal, which was neither acknowledged or recorded, of which the following is a copy :

" Whereas, the boundary line which divides the lot of ground on the south side of State street, owned by Joseph Alexander and his wife, Ann Alexander, from the lot of ground owned by the heirs of Henry Hogan, deceased, is not precisely ascertained and known,

and, whereas, the said Joseph Alexander and Ann Alexander are about erecting a building on their said lot of ground, which renders it desirable that the said boundary line should be settled. Now, therefore, to the end that the said boundary line may be amicably ascertained, settled and established, the said Joseph Alexander and Anna Alexander, for themselves, their heirs, executors, administrators and assigns, of the first part, and Nelly Hogan and William Brown, Dorothy Brown and Eleanor Brown, heirs of Henry Hogan and Martina Brown, deceased, which said Nelly Hogan, Henry Hogan and Martina Brown were and are the heirs of William Hogan, deceased, of the second part, do enter into the following articles of agreement, that is to say:

"*First.* The said party of the first part shall have full liberty to place the west wall of the building, which they are now erecting, as near to the east wall of the building, now occupied by the party of the second part, as they shall or may choose to do, and to build and finish the same in any manner they please without molestation or hindrance from the said party of the second part, or any person or persons by their direction or claiming under them.

"*Second.* The center of the brick work of the said wall, when so built by the party of the first part at their own expense, and a corresponding line drawn to the south bounds of said lots, shall forever hereafter be allowed and acknowledged by both the parties to this agreement, and all persons claiming under, to be the true division line between the aforesaid lots of ground.

"*Third.* The said party of the second part, or their heirs and assigns, shall have full liberty whenever they may choose to erect a building on their said lot of ground, to join the front and rear walls of such building to the wall built as aforesaid by the party of the first part, and to fasten thereto, and finish thereon in any manner they may choose to do. Also to build upon and raise higher the said division wall or extend the same further south so as to suit their own convenience in building, but at their own expense, without molestation or hindrance from the said party of the first part, or any person or persons by their directions or claiming under them. Provided, however, that the said party of the second part shall not break down any part of said division wall, or in any manner unnecessarily mar or injure the same.

"*Fourth.* Each of the parties to, this agreement shall keep in repair their own half of the said division wall, and neither party, or any person or persons by their direction or claiming under them, shall have liberty to pull down or demolish any part of the said division wall without consent of the other first had and obtained.

"In witness thereof, the parties to this agreement have severally set their hands and seals this ―――― day of May, one thousand eight hundred and fifteen, to these presents.

"JOSEPH ALEXANDER.
"ANN ALEXANDER.
"NELLY HOGAN.
"WM. BROWN.
"DOROTHY BROWN.
"ELEANOR BROWN.

The words "or their heirs and assigns" in the first line of the third article, were interlined before execution.

"Signed, sealed and delivered ⎫
      in presence of      ⎬
                       "JAMES LA GRANGE,
                       "PETER LANSING, Jr."

The plaintiff, in due season, objected to the introduction of the agreement, and the exception taken to the ruling admitting it will be first considered.

When offered, the testimony showed that the signature of plaintiff's grantor to the agreement of 1815 was in his handwriting; that each of the adjoining owners entered into possession of the half of the wall next adjoining him by inserting therein the necessary timbers for his building; the agreement offered was found by defendant among his muniments of title in 1874 or 1875; and plaintiff, about the same time, found a duplicate thereof among the deeds and papers which it had received at the time of taking title.

Under the circumstances proven, it was clearly not error to receive in evidence as an ancient writing, and without proof of execution, this agreement which purports to have been executed more than seventy-five years before that time.

The agreement was ample to support the finding that the parties

undertook to practically locate the boundary line between them in the center of the wall shortly thereafter constructed.

And this location was not questioned, so far as the record discloses, from 1815 down to 1887; on the contrary, there are positive acts of acquiescence.

Plaintiff's remote grantor, who executed the agreement, took possession of only six inches of the wall, which he made use of to support the beams of the building erected by him.

Defendant's grantor thereafter erected a building, at which time he took possession of one-half of the wall next to him in the same manner as the other party to the agreement had done.

In 1850, plaintiff raised its building, and for that purpose ran the wall up several feet, but only took possession of one-half of the wall.

About twenty-four years later, defendant remodeled his building, increasing the height of each of the several stories and adding an extra story, in the doing of which, he extended the division wall some fifteen feet higher than it was before. And when this was done, if not before, plaintiff had knowledge of the existence of the agreement of 1815. The defendant at this time cut off six inches from the face of the partition wall, and rebuilt it, his purpose being to have the portion of it which he claimed, conform in appearance to the rest of the building front.

When plaintiff increased the height of its building in 1887, it claimed the right to use the half of the wall on defendant's side as well as its own, but then about seventy-two years had elapsed since the attempt of the owners to locate the division line, and the lapse of time, considered in connection with the facts referred to, fully establish a legal acquiescence in the location originally made.

Neither the parties to the original location, nor their successors in title, can now be heard to deny that such line constitutes the true boundary.

The agreement establishes that the wall is a party wall, and if the views so far expressed are correct, each owns in severalty so much of the wall as stands upon his lot, subject to the easement of the other owner for its support, and the equal use thereof as an exterior wall of his building. (*Partridge* v. *Gilbert*, 15 N. Y. 601.)

No other use of the adjoining owner's portion of the party wall is permissible. Windows have no place in a party wall. (*Nash* v.

*Kemp,* 12 Hun, 592; *Danenhauer* v. *Devine,* 51 Texas, 489; *St. John* v. *Sweeney,* 59 How. Pr. 175; *Sweeney* v. *St. John,* 28 Hun, 634.)

Defendant was, therefore, doing as he lawfully might in filling up the openings on his half of the party wall.

The judgment should be affirmed.

PUTNAM, J., concurred.

MAYHAM, P. J. (dissenting):

This is an appeal from a judgment entered upon the decision of the trial judge in favor of the defendant.

The action was to restrain the defendant from closing up or obstructing windows left by the plaintiff in the westerly wall of the plaintiff's bank building, above the top of the defendant's adjoining building.

The complaint alleged that plaintiff purchased the premises under a mortgage foreclosure and took title under a master's deed, dated the 10th day of April, 1833, and entered into the occupation at that date, and subsequently erected a building thereon of which the lower portion of this wall was a part, and alleged in substance that the whole of this wall was upon the premises so purchased.

The answer admits the plaintiff's title under the master's deed, but denies that the west wall of the building erected by the plaintiff was wholly on the land embraced in plaintiff's deed, or conveyed by it, and alleges that "the west wall of plaintiff's building is a party wall 12 inches thick; six inches of the westerly part of said wall belongs to and is the property of this defendant, and six inches of the east side of said wall belongs to and is the property of plaintiff."

The plaintiff's deed bounded the land conveyed by the property of one Douw on the east, which seems by the evidence to be a well-defined and fixed monument, called for fifty-three feet fronting on State street, and bounded the land so conveyed on the west by land of Henry Hogan, to whose title defendant has succeeded by a deed dated December 24, 1833, and recorded December 21, 1834.

The proof showed that the wall in dispute was fifty-one feet seven and one-half inches from Douw's west line, including both exterior

walls of the plaintiff's building, so that, standing upon plaintiff's deed alone, the wall in dispute was wholly on the plaintiff's premises.

But the deed from Tremain to Brown, under which the defendant claims, describes the defendant's land as bounded easterly by a line running through the party wall on the west of the Joseph Alexander lot, which is the plaintiff's lot and the wall in dispute in this action.

It is quite clear, that standing upon the description and recitals in the deed given by the referee in partition under which the defendant claims, the rights of the plaintiffs could not be affected, as neither the plaintiff nor the mortgagor was a party to that proceeding, and the title under the foreclosure through which the plaintiff's claim was perfected, before the deed in partition was executed and the mortgage under the foreclosure of which plaintiff derives title by its terms embraces the land on which the wall in dispute stands, and thus conveys to the mortgagee and the purchaser upon the foreclosure whatever right and title the mortgagor had in the premises at the time of the execution of that instrument; the foreclosure operates to extinguish the mortgagor's equity of redemption and eliminate the defeasance, and the purchaser takes the title of the mortgagor as of the time of the execution of the mortgage, and when the mortgage lien was created. (*Batterman* v. *Albright*, 122 N. Y. 489; *Rector, etc.*, v. *Mack*, 93 id. 488.)

Although the deed to Brown, through whom defendant claims, refers to this wall as a party wall, which as we have seen was subsequent to the conveyance upon the foreclosure, yet no reference seems to have been made in the deed to the defendant to this wall as a party wall.

But even if it had been thus described in all the conveyances after the deed in partition, still it is difficult to see how such description could operate as constructive notice to the plaintiff as the purchaser of adjoining lands, and I think under the facts proved, that the plaintiff must be regarded as taking its title under the foreclosure unaffected by actual or constructive knowledge of any agreement which the mortgagor had previously made as to the westerly line of the mortgaged property, and is the owner of, and may hold and use the land according to the actual description in the mortgage, unless the agreement of 1815 can be upheld as a practical location

of this line, running with the land and binding upon all subsequent owners.

The defendant offered in evidence on the trial an instrument in writing, dated in May, 1815, which was not acknowledged or recorded, purporting to have been made by Alexander, the mortgagor, under whose mortgage plaintiff claims title, and the heirs of Henry Hogan, from whom, through certain mesne conveyances, the defendant claims title, of which the following is a copy :

" Whereas, the boundary line which divides the lot of ground on the south side of State street owned by Joseph Alexander and his wife, Ann Alexander, from the lot, owned by the heirs of Henry Hogan, deceased, is not precisely ascertained and known, and whereas, the said Joseph Alexander and Ann Alexander are about erecting a building on their said lot of ground, which renders it desirable that the said boundary line should be settled.

" Now, therefore, to the end that the said boundary line may be amicably ascertained, settled and established, the said Joseph Alexander and Anna Alexander, for themselves, their heirs, executors, administrators and assigns, of the first part, and Nellie Hogan, and William Brown, Dorothy Brown and Eleanor Brown, heirs of Henry Hogan and Martina Brown, deceased, which said Nellie Hogan, Henry Hogan and Martina Brown, were and are the heirs of William Hogan, deceased, of the second part, do enter into the following articles of agreement, that is to say :

" *First.* The said party of the first part shall have full liberty to place the west wall of the building which they are now erecting as near to the east wall of the building now occupied by the party of the second part, as they shall, or may choose to do, and to build and finish the same in any manner they please, without molestation or hindrance from the said party of the second part, or any person or persons by their directions, or claiming under them.

" *Second.* The center of the brick work of the said wall, when so built by the party of the first part, at their own expense, and a corresponding line drawn to the south bounds of said lot, shall forever hereafter be allowed and acknowledged by both parties to this agreement, and all persons claiming under ——, to be the true division line between the aforesaid lots of ground.

" *Third.* The said party of the second part, or their heirs and

assigns, shall have full liberty, whenever they may choose, to erect a building on their said lot of ground, to join the front and rear walls of such building to the wall built as aforesaid by the party of the first part, and to fasten thereto and finish thereon in any manner they may choose to do, also to build upon and raise higher the said division wall, or extend the same farther south, so as to suit their own convenience in building, but at their own expense, without molestation or hindrance from the said party of the first part, or any person or persons by their directions, or claiming under them.

"Provided, however, that the said party of the second part shall not break down any part of said division wall, or in any manner unnecessarily mar or injure the same.

"*Fourth.* Each of the parties to this agreement shall keep in repair their own half of the said division wall, and neither party, or any person or persons, by their direction or claiming under them, shall have liberty to pull down or demolish any part of said division wall, without the consent of the other first had and obtained."

This paper purported to be signed by the parties named in it, and witnessed by two subscribing witnesses.

The plaintiff's counsel objected to the receipt of this paper in evidence, on the ground that its execution was not sufficiently proved; that it was not recorded, and there was no proof of any notice to the plaintiffs at the time it took its deed; also, that the answer admitted that this wall in question was built by the plaintiff, who took title in 1833, and the agreement related to a party wall in 1815, and that the evidence was irrelevant and immaterial.

These objections were overruled by the court, and the plaintiff duly excepted.

The evidence shows that this agreement was in the possession of the defendant, with his other evidences of title, from the time of his purchase of his premises in 1874, and it is insisted that under the circumstances it was properly received in evidence, without proof of its execution, as an ancient writing.

This paper purports to have been executed in 1815, and was offered and received in evidence in 1890, seventy-five years after it bears date. This long interval made it clearly an ancient writing within the authorities, especially as the wall or line to which defendant claims it relates has remained in part in the possession of the

defendant, or persons through whom he derives his title, since 1840, as shown by the undisputed evidence in the case.

The rule upon this subject seems well settled, both in this country and in England, that when possession accompanies the paper it proves itself, if an ancient writing.

In *Hewlett* v. *D. & S. Cock* (7 Wend. 371), NELSON, J., in delivering the opinion of the court, after an extensive review of the authorities at that time, says : " Possession accompanying the deed is always sufficient without other proof, but it is not indispensable."

In that case the lease which was offered in evidence as an ancient document, was found among the muniments of the title of the farm of which the premises in question were a part fifty years before the trial, and a new trial was ordered because the trial judge refused it in evidence without proof of execution.

We are, therefore, of the opinion that it was not error in this case to receive this writing, without proof of execution, especially as the execution by one of the mortgagors was proved by competent evidence of the genuineness of his signature.

But the more serious question as to its admissibility against this plaintiff, as it seems to us, is as to its competency as against this plaintiff, who, so far as the case shows, purchased at the mortgage sale, without any notice, either actual or constructive, of the existence of this contract.

The plaintiff, in its complaint, claims title to this entire wall, derived under a foreclosure of a mortgage, in which there was no notice of the existence of the claim now made by the defendant, that this was a party wall, and at the time of the execution of said mortgage, and at the time of the purchase by the plaintiff, no actual or constructive notice was given of the existence of any adverse claim.

If this claim can be proved and established by this instrument, the plaintiff will lose not only the six inches of land in dispute, but the title to and control of lands clearly conveyed to it on the mortgage sale.

Clearly, there was no dispute or controversy over this line apparent upon the face of the mortgage, and the plaintiff was justified in assuming, in the absence of any notice or record evidence to the

contrary, that the mortgage conveyed, free of charge or incumbrance, the premises covered by its description.

The defendant seeks to break the force of this objection by proving that, in 1874, the president and cashier of the plaintiff had a copy of this contract which the president exhibited to the defendant.

I do not think that that proves or tends to prove notice to or knowledge in the plaintiff of the existence of this writing at the time of the purchase of these premises by it, or at the time of the execution of the mortgage to which, as we have seen, the plaintiff's title relates.

While the law presumes a thing to continue as it is once proven to be, until a change is shown, I am not aware of the existence of any rule extending that presumption backward so as to make the proof that some of the officers of this bank had a copy of this instrument in 1874, evidence of notice to or knowledge in the plaintiff of its existence in 1833.

The only evidence upon which it can be claimed that there was a practical location of this line, and the erection of this wall upon, or in accordance with, such location, is this written instrument, and that evidence is found only in the recitals contained in it.

It is true that this wall, as a division between the premises of the plaintiff and that of the defendant, is presumptive evidence of the location of this line, and had the proof shown knowledge in the plaintiff of the agreement contained in this writing, its acquiescence in the location of the line in the center of the wall, as specified in the writing, would have amounted to a practical location by which the plaintiff would be bound.

But before there can be an acquiescence such as would bind a party by a location as against the calls in his deed, he must be informed of the existence of an agreement by which the line is claimed to be located. (*Baldwin* v. *Brown*, 16 N. Y. 359 ; *Reed* v. *Farr*, 35 id. 116.)

In *Baldwin* v. *Brown* the court say : " Unless the acquiescence has continued for a sufficient length of time to become thus conclusive, it is of no importance. * * * In all cases in which practical locations have been confirmed upon evidence of this kind, the acquiescence has continued for a long period, rarely less than twenty years," and the court then gives five instances in which it continued from twenty-six to forty-eight years.

It is true that these cases relate to parol agreements and not to writings. But when the party sought to be concluded, as in this case, is ignorant of the existence of any writing, and holds under paper title, not in accordance with the alleged practical location, it is difficult to see how the terms of the deed can be overthrown short of an adverse possession, such as would bar an action at law to recover the possession.

We are, therefore, of the opinion that this writing furnished no legal evidence to establish a practical location as against the plaintiff, which took title under the deed in foreclosure without notice of its existence, and who within the calls of the deed constructed this wall on lands covered by the terms of that instrument, and that its reception in evidence was, therefore, error.

But it is insisted by the defendant that this agreement conveyed no land, and, therefore, was not required to be recorded, and that subsequent purchasers or incumbrancers were not entitled to notice of its existence. But it would seem that if it conveyed no land, or any interest in land, it would not be a contract or agreement running with land so as to bind such subsequent incumbrancers or purchasers.

The rule seems well settled that such contracts or covenants are personal and do not run with the land. In *Cole* v. *Hughes* (54 N. Y. 444), the court seem clearly to assert that doctrine, and quote with approbation the language of WILDE, J., in *Hurd* v. *Curtiss* (19 Pick. 459): "That no covenant will run with the land so as to bind the assignee to perform it, unless there were a privity of estate between the covenantor and covenantee," and that this rule was without exception; and the same case quotes the following, from Washburn on Real Estate, "that when one who makes a covenant with another in respect to land, neither parts with nor receives any title or interest in the land, at the same time with and as part of making the covenant, it is at best a mere personal one, which does not bind his assignees, and that such covenants, and such only, run with land as concern the land itself, in whosesoever hands it may be."

If, therefore, within this rule no title or interest in land passed from or to Alexander, the mortgagor, by this writing, then none of its obligations would attach to the land in the hands of the purchaser under his mortgage.

If we are right in our conclusion that this writing was not competent evidence as against the plaintiff, and that a practical location of the line between the plaintiff and defendant was not established by it, then it follows that as the front of plaintiff's land on State street, called for by its deed, is fifty-three feet ten inches, and the width of plaintiff's bank building from Douw's line to the westerly side of plaintiff's west wall was fifty-one feet seven and a half inches, the whole of said westerly wall built by plaintiff is on plaintiff's land. But it is further urged by the defendant that this wall in dispute is and always has been used as a party wall between the plaintiff and defendant, and that, therefore, all the rights and incidents of a party wall attach to the same.

The evidence in this case shows that the wall in dispute has been the dividing wall between the premises of the plaintiff and defendant at least since 1840, and that the buildings on either side have connected with it by inserting beams and timbers in it for support.

This furnishes *prima facie* evidence that the wall in question is and has been used as a party wall, and belongs equally to the plaintiff and defendant.   In *Sherred* v. *Cisco* (4 Sandf. 490), the court lays down the rule upon this subject as follows : " The principle of the decisions is, that while the common user is presumptive evidence of a tenancy in common in the land and wall, that presumption is rebutted by proof of the precise extent of the land originally belonging to each owner, and each then is deemed the exclusive owner of so much of the wall as stands on his own land."

In *Schile* v. *Brokhahus* (80 N. Y. 614), CHURCH, C. J., says : " The old wall from long user, in the absence of evidence, must be deemed a party wall presumptively, either from an agreement to that effect or from its being built upon the line of the two lots for that purpose by the respective owners."

But a fee will not be implied from user when an easement only will secure the privilege enjoyed (*Roe* v. *Strong*, 107 N. Y. 350), and when, as in this case, the plaintiff establishes a clear evidence of title in itself to the *locus in quo*, the occupancy by the defendant, unsupported by title, paramount to that of the plaintiff, must, it seems to me, be but a user, and as such valid to the extent that it has been enjoyed for so long a period of time ; but without the aid of the writing which we have excluded, limited to that extent, and

ineffectual to prevent the plaintiff from running the wall up on the same foundation, with or without windows, and that any interference by the defendant by filling up such windows, or building another wall resting upon the plaintiff's against such windows, is a violation of the plaintiff's property rights, and a permanent assumption of the use of this wall for which an injunction might issue.

It will be seen that the success of the contention of the respective parties to this action largely depends upon the question whether the instrument in writing put in evidence by the defendant, under the objection of the plaintiff, and which we hold incompetent, and the admission of which, by the trial judge, we have reached a conclusion was error, disposes of this question in favor of the plaintiff, for which this judgment should be reversed.

Judgment affirmed, with costs.