(174 App. Div. 78)

## JAMIESON & BOND CO. v. REYNOLDS et al.

(Supreme Court, Appellate Division, Second Department.   May 19, 1916.)

1. NAVIGABLE WATERS &=36(1)—TITLE OF PEOPLE—LOW-WATER MARK.

The title to the lands below low-water mark in Jamaica Bay, not disposed of by royal grant prior to the first Constitution, was vested in the people of the state of New York, and there remained, unless divested by a proven grant from them, by the presumption of a lost grant, or by adverse possession.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180–182, 184, 200; Dec. Dig. &=36(1).]

2. ADVERSE POSSESSION &=114(1)—LAND UNDER WATER—EVIDENCE.

In an action to register title, under the Torrens Law (Real Property Law [Consol. Laws, c. 50] art. 12, as amended by Laws 1910, c. 627), to lands between low-water mark and a channel in Jamaica Bay, evidence *held* not to show adverse possession as against the people of the state.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683; Dec. Dig. &=114(1).]

3. RECORDS &=9(9)—REGISTRATION OF TITLE—EVIDENCE.

The conclusion that the plaintiff has a record title in fee simple to such land must rest upon facts uncontroverted or established, and the court may not accept the official examiner's conclusion, and the plaintiff may supplement the relevant facts stated in the certificate of title, the abstract, survey, etc., by common-law or statutory evidence.

[Ed. Note.—For other cases, see Records, Dec. Dig. &=9(9).]

4. ADVERSE POSSESSION &=106(1)—USER—TITLE IN FEE OR EASEMENT.

A title in fee will not be implied from user, where an easement only will secure the privilege enjoyed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 604, 619–623; Dec. Dig. &=106(1).]

5. RECORDS &=9(8)—REGISTRATION OF TITLE—ANSWER—DENIALS.

Under Code Civ. Proc. § 500, providing that the answer must contain a general or specific denial of each material allegation of the complaint controverted by the defendant, or a statement of any new matter constituting a defense or a counterclaim, the defendant, in an action to register title under the Torrens Law, may not, under such statutory denials, contradict the facts in the documents annexed to the complaint therein, unless in his answer he deny the facts he would contradict, and therein specifically allege the controverting facts, and the people of the state are not exempted from such rules of pleading, etc.

[Ed. Note.—For other cases, see Records, Dec. Dig. &=9(8).]

6. RECORDS &=9(9)—REGISTRATION OF TITLE—EVIDENCE.

In an action to register the title to a tract of land between low water and a channel in Jamaica Bay, under the provision of the Torrens Law, (Real Property Law [Consol. Laws, c. 50] art. 12, as amended by Laws 1910, c. 627), certificate, with an accompanying document and map of official examiner, *held* not to contain any evidence of a record title to the lands in the plaintiff.

[Ed. Note.—For other cases, see Records, Dec. Dig. &=9(9).]

7. NAVIGABLE WATERS &=37(4)—GRANT—TITLE.

An express grant of land to the beach or beaches carried title to low-water mark.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 211, 218–222; Dec. Dig. &=37(4).]

8. JUDGMENT &=702—ESTOPPEL—STATE.

In an action under the Torrens Law (Real Property Law [Consol. Laws, c. 50] art. 12, as amended by Laws 1910, c. 627), to register title to land

&=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

under water between low-water mark and a channel in Jamaica Bay, the circumstance that the defendant city of New York, successor to all the rights of the state, did not contest the claim, and consented to the form of a judgment vesting in the plaintiff a title in fee simple absolute to all lands under water as far as the channel, was not evidential as against the state.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1227; Dec. Dig. ☞702.]

9. RECORDS ☞9(9)—REGISTRATION OF TITLE—EVIDENCE—PAYMENT OF TAXES.

In such case, the fact that taxes were paid to the city of New York on a parcel including the lands under water was not a fact tending to prove plaintiff's title.

[Ed. Note.—For other cases, see Records, Dec. Dig. ☞9(9).]

Appeal from Special Term, Queens County.

Action to register title under the Torrens Law by the Jamieson & Bond Company against George G. Reynolds, 2d, the People of the State of New York, and the City of New York. From a judgment of Special Term, entered in the office of the clerk of the county of Queens, the People appeal. Reversed, and new trial granted.

See, also, 169 App. Div. 107, 154 N. Y. Supp. 836.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

Robert P. Beyer, Deputy Atty. Gen., for the People.
Gilbert Ray Hawes, of New York City, for respondent.

STAPLETON, J.   The object of the action is to register the title of the plaintiff to a tract of land, situate at Rockaway Beach, in Queens county, under the provisions of article 12 of the Real Property Law (chapter 52 of the Laws of 1909, constituting chapter 50 of the Consolidated Laws), as amended by chapter 627 of the Laws of 1910. The named defendants are the people of the state of New York, the city of New York, and Reynolds, a mortgagee. The plaintiff claims to hold the title to the legal estate in fee simple in all the real property described in the complaint. It is adjudged in the judgment that such title is vested in the plaintiff. The defendants the people of the state of New York are the only appellants. A substantial section of the tract lies between high-water mark in Jamaica Bay and a channel in that body of water known as "Beach Channel." The design of the appeal is to eliminate that portion of the tract from the description of the property that the judgment directs to be registered. It has been decided by the official referee, to whom it was referred to hear and determine the issues formed by the pleadings of the plaintiff and the defendants appellants, that the plaintiff has a record title and title by adverse possession extending over 40 years. If the evidence sustains either of these determinations, the judgment rests solidly. But we deem the appellants' contention valid, in so far as that portion of the tract described which lies between low-water mark and Beach Channel is included within the description.

[1] It has been held that the title to the lands at least below low-water mark in Jamaica Bay, not disposed of by royal grant prior to

the first Constitution, was vested in the people of the state of New York. Rockaway Park Improvement Co. v. City of New York, 140 App. Div. 160, 124 N. Y. Supp. 1096. Title remained in the people of the state of New York unless divested in one of three ways: (1) By a proved grant from them; (2) by the presumption of a lost grant; (3) unless title was vested by adverse possession in another ownership. On the 29th day of May, 1909, after the date of the judgment in the case cited, the people of the state granted to the city of New York all their right, title, and interest to such lands within the zone of which the lands in question are situate. Chapter 568, Laws of 1909. This grant became operative upon the United States government making its first appropriation for the construction of the new harbor mentioned in the act, or upon the city of New York appropriating and setting aside a sum not less than $1,000,000 for the same purpose. As we read the answer of the appellants, there is in it an admission of compliance with a specified condition precedent of this grant. The city of New York was made a defendant, but failed to answer. It waived "service of all papers in this action, except any supplemental or amended complaint, notice of settlement of any interlocutory judgment, and of any final order or judgment, and also notice of entry thereof." It accepted the judgment, in which was incorporated this provision:

"Subject to such right, title, and interest as may be possessed by the city of New York, under the provisions of its charter, to such portion of said lands under water in front of any projected streets, which it may hereafter assert."

No claim is or could be made that there is any evidence which would justify the application of the doctrine in relation to the presumption of a lost grant. Mission of the Immaculate Virgin v. Cronin, 143 N. Y. 524, 38 N. E. 964; Kellum v. Corr, 149 App. Div. 200, 208, 133 N. Y. Supp. 784. On a former appeal in this case, Jamieson & Bond Co. v. Reynolds et al., 169 App. Div. 107, 154 N. Y. Supp. 836, it was held that, if the plaintiff's title rests exclusively upon a grant from the state to plaintiff's predecessor in title, then it is beyond controversy that the judgment, so far as it decrees registration of the title to the land under water in the plaintiff, is erroneous. The grant is a commercial grant, containing conditions and covenants which negative an estate in the plaintiff in fee simple absolute.

[2, 3] We find no evidence adverse to the people of the state of possession of the lands under water beyond low-water mark. The uncontradicted evidence is that the premises, including the uplands, were entirely vacant prior to the year 1888, and that at that time there were no fences surrounding the property and no docks or other structures running into the water. Subsequent to that time the uplands were fenced in by the erection of posts with three rails running lengthwise and supported by the posts. One could go through them. Part of this fence is still there, and part is now private hedge. The improvements on the lands under water were "fill" and docks and some buildings. A substantial part of the described tract was uncovered and unimproved. There is no evidence definitely fixing the time when buildings were erected on lands originally under water. There is no evidence as to when the fill was made. It could be made under the grant of

lands under water for restricted beneficial enjoyment made by the people of the state to the plaintiff's predecessor in title in May, 1903. Plaintiff's president testified it filled in under a permit from the dock department of New York City. The piers could be erected pursuant to said grant if erected after its date, or, if made before its date, in the exercise of an easement in such lands. A title in fee will not be implied from user where an easement only will secure the privilege enjoyed. De Lancey v. Piepgras, 138 N. Y. 26, 33 N. E. 822; Roe v. Strong, 107 N. Y. 350, 14 N. E. 294. When we consider the nature of the property and the evidence offered to show possession, we cannot approve of the finding of fact that the plaintiff has title by possession adverse to the people of the state to the lands beyond low-water mark within the description in the judgment. De Lancey v. Piepgras, ut supra; Consolidated Ice Co. v. Mayor, 166 N. Y. 92, 97, 59 N. E. 713; Jamieson & Bond Co. v. Reynolds, ut supra.

[4, 5] But one question remains: Has the plaintiff a record title in fee simple to such lands? A conclusion that it has must rest upon facts uncontroverted or established. Jamieson & Bond Co. v. Reynolds, supra. The official examiner says it has. The court may not accept his conclusion. The relevant facts stated in the certificate of title, the abstract, searches, and survey, presumptively establish allegations of fact in the complaint, to which mere denials have been interposed. The plaintiff may supplement these proofs by common-law or statutory evidence. The defendant may not, under the denials authorized by Code of Civil Procedure, § 500, contradict by his proof the facts in the documents annexed to the complaint herein, unless in his answer he deny the facts he would contradict, and therein specifically allege the controverting facts. The people of the state are not exempted from these rules of pleading, evidence, and procedure. Barkenthien v. People, 212 N. Y. 36, 105 N. E. 808. It is alleged in the complaint that the north boundary of the premises described as parcel No. 1 is the south side of Beach Channel. This is denied, and it is specifically pleaded that the survey attached to the official examiner's certificate fails properly to identify the property, and also fails to set forth the marks of high and low water in Jamaica Bay, and that the city of New York is vested with a considerable portion of the premises sought to be registered, having acquired title to the land under water in Jamaica Bay beyond low-water mark by chapter 568 of the Laws of 1909.

[6, 7] The certificate, with accompanying documents and map of the official examiner, must be examined for facts to sustain plaintiff's allegations, as no other evidence tending to prove a record title has been adduced. The official examiner's certificate states:

"The property intended to be registered by this action is situate at Rockaway Beach, Long Island, in the borough and county of Queens, city and state of New York. 'It is part of the property which originally belonged to Captain John Palmer, who obtained a patent from Governor Dongan, which patent included all the land, "together with all and all manner of messuages, pastures, feedings, Meadows, marshes, Woods, Underwoods, Wayes, fences, Lakes, Ponds, Creeks, Beach or Beaches, Rivers, Brooks, Springs, Hunting, Hawking, fishing and fowling and Appurtenances whatsoever," which was bounded as follows: "On the East with Hempstead West Patent Line, on the South, with the Maine Sea or Ocean to Low Water Marke, and on the West with Gutt or

Inlett which makes the Bay or Sound betwixt Jamaica and the said Tract, Parcell or Neck of Land, and on the Northward with the said Bay or Sound as it runs East or Easterly untill it comes unto or meets with Hempstead Line." The said patent is dated November 3, 1685, and recorded in the office of the secretary of state of New York. The said John Palmer also obtained a deed from the Indians, covering the same property as described in this patent, which deed is dated October 6, 1685, acknowledged October 9, 1685, and recorded at the request of Captain Palmer on the 27th day of October, 1685. This Indian deed was executed by the marks of two Indians named Pamon and Tackpousha. John Palmer, and Sarah, his wife, conveyed the said property to Richard Cornell, by deed, dated August 25, 1687, and recorded in Liber B of deeds, at page 155, in the office of the clerk of the county of Queens. The description of the property in the deed from John Palmer to Richard Cornell is the same as that in the letters patent from Governor. Dongan to John Palmer. Richard Cornell and his heirs had possession of the said property, and held it in common for almost 200 years, and in the year 1809, an action in partition was commenced by the Cornell heirs, which is entitled "John Cornell, Plaintiff, against William Cornell and Others, Defendants." The action was commenced in the Court of Common Pleas for the County of Queens. John Van Nostrand, Lawrence Denton, and Urah Pearsall were appointed commissioners. The whole property as above described was partitioned into three divisions. Division No. 1 and division No. 2 consisted of beach lots fronting on the Ocean, and the third division consisted of marsh or meadow lots, fronting on and lying in Jamaica Bay.' (The foregoing is quoted from the official examiner's report in Crabbe v. Hardy, the final judgment and decree of registration in which was entered November 8, 1912. See also report of official examiner in Ruff v. Kieley, registration action, judgment in which was entered October 7, 1911, for full history of the early title.) The commissioner's report in the partition action of Cornell v. Cornell and Others, referred to above, dated June 4, 1809, was confirmed June 6, 1809. It allotted to William Cornell 'all that certain lot known and distinguished by lot No. 1, in the first division, made by us of the beach bounded easterly by lot No. 2, northerly by the Beach Channel, southerly by the ocean, and westerly by the gut, or Jamaica Inlet, so called, the dividing lines of the lots on the beach running north and south, and stakes being placed between each lots.' "

The official examiner also states:

"Note.—Although the deed from Cornell to Ryder referred to on page 12 gives the northern boundary as 'the Bay,' it is clear that this refers to Jamaica Bay, and that, as Cornell conveyed all that he got from the commissioners, the northern boundary was intended to be the 'Beach Channel in Jamaica Bay,' as set forth in the deed from commissioners in partition to Cornell in 1809, supra. This same description has been followed in all subsequent deeds, but as the Jamieson & Bond Company and its predecessors have claimed title to all these lands under water in Jamaica Bay, as far north as the Brant or Beach Channel, and have held same by adverse possession for over 100 years, the Jamieson & Bond Company has good title thereto, both by grant and prescription."

It will be observed that the only reference to lands between high and low water mark is with respect to the property conveyed by the patent, bounded on the south by the "Maine Sea" or ocean. The property sought to be registered in this proceeding is that portion of the property which is bounded on the north by the bay or sound betwixt Jamaica and the said tract. The property facing on the ocean is not part of the parcel sought to be registered and is not involved in this proceeding. The only claim for any rights to lands under water in Jamaica Bay must arise from the general reference to "messuages, * * * Meadows, marshes, * * * Beach or Beaches, * * * and Appurtenances whatsoever." In a case where the grant to Palmer

159 N.Y.S.—21

had been considered, the correct opinion is expressed that, because of the express grant to the beach or beaches, the grant carried to the low-water mark. Rockaway Park Improvement Co. v. City of New York, ut supra.

Assuming that the commissioners in the Cornell partition suit, to which the people of the state of New York were not parties, did, in making the division under that judgment, fix Beach Channel as the north boundary of lot No. 1, within which the premises involved are included, that could not operate to divest the people of their title between low-water mark and Beach Channel. Plaintiff would find support in another circumstance, ineffectual as evidence against the appellant, that the boundaries fixed by those commissioners were found as a fact in another litigation (Kellum v. Corr, 209 N. Y. 486, 103 N. E. 701), to which the appellants were not parties. In the chain of title there is a deed by a referee to sell in a foreclosure action in which a portion of the premises described in the complaint was described. The north boundary of the premises is described in the mortgage and in the referee's deed as the Bay.

[8, 9] The plaintiff would have probative force given to the circumstance that the city of New York, which has succeeded to all the rights of the state, did not contest plaintiff's claim, and consented to the form of the judgment as entered, vesting in the plaintiff a title in fee simple absolute to all the lands under water as far north as Beach Channel. The circumstance may be peculiar, but it is certainly not evidential against the appellants. Barkenthien v. People, 212 N. Y. 36, 44, 105 N. E. 808; see, also, Bush v. O'Brien, 164 N. Y. 205, 58 N. E. 106. That taxes were paid to the city of New York on a parcel including the lands under water is not a fact tending to prove title. Consolidated Ice Co. v. Mayor, 166 N. Y. 92, 101, 59 N. E. 713.

We conclude that there is no evidence of a record title in the plaintiff in the lands under water in Jamaica Bay north of low-water mark. As there is no evidence as to the location of the low-water mark, either as existing at the time of the Palmer grant or at the present time, we are unable to render final judgment upon the rights of the parties, and we must therefore reverse the judgment and grant a new trial, with costs to appellants to abide the final award of costs. All concur.