Harry B. Frank, J.
This case was tried on certain stipulated facts in addition to testimony and documentary proof.
The uncontradicted facts indicate that plaintiff and defendant own adjoining parcels of real estate on the northerly side of 73rd Street in New York City. Plaintiff’s parcel is located some 150 feet east of the corner of Fifth Avenue and 73rd Street and its frontage on 73rd Street runs 21 feet easterly from that point. Defendant’s adjoining parcel, which begins some 171 feet east of the corner of Fifth Avenue and 73rd Street, similarly has a 21-foot frontage running easterly on 73rd Street. The depth of both properties is 102 feet 2 inches.
Prior to August 1, 1882, both parcels were owned by a ‘ ‘ Ruddell family ’ ’. By deed dated August 1, 1882, and recorded August 5, 1882, the property presently owned by plaintiff was conveyed to plaintiff’s predecessors in title. The description of the property in that deed includes the following: “The easterly wall of said building being a party wall”. Similarly, the adjoining’ parcel, which is presently defendant’s property, was conveyed by the same owners by deed dated April 30,1883, and recorded May 1, 1883, to defendant’s predecessors in title. That deed describes the westerly boundary of the property as going “ partly through a party wall ”. It is agreed that, *51 at the time of the conveyances and prior to the year 1901, there were building's on each of the adjoining properties which used the common wall for support. It is also admitted that the wall in question has at all times had a thickness of 16 inches, standing 8 inches on the property of each adjoining owner. In the year 1901 the buildings on both premises were demolished, but the common wall was left standing. The record does not indicate in what order the buildings were demolished.
Thereafter, in 1901, construction of a new building was begun on plaintiff’s property, which building was completed in 1902. That new building on plaintiff’s property utilized the wall on its easterly side. From 1901 to the present time, neither defendant, nor its predecessors in title, used the wall to support any building. A building was constructed on part of defendant’s property after 1901, but the wall in question has never been used by said building, or the additions thereto, for support.
The stipulated facts also indicate that all deeds and mortgages in plaintiff’s chain of title, from August 1, 1882 up to the present, describe the easterly boundary of plaintiff’s property as going through a “party wall”. In connection with the documents in defendant’s chain of title, for the same period, all the deeds and mortgages in connection therewith describe the westerly boundary as going ‘ partly through a party wall ’ ’, with the exception of a lease dated February 6, 1934, and recorded on February 13, 1934, and deeds dated June 25, 1934, and recorded September 18,1934, and July 3,1934, and recorded September 18, 1934. The descriptions of defendant’s property in these documents do not include reference to the westerly boundary passing through a party wall. However, the description therein of defendant’s property includes the 8 inches of ground on which the westerly part of the wall stood, and stands, according to the size of plot conveyed. All subsequent deeds in the defendant’s chain of title describe the westerly boundary as passing through a party wall.
On the trial the evidence indicated that the plaintiff herein removed a portion of the brick wall in question and inserted glass brick in its stead for purposes advantageous to its own building. These glass bricks extended through that portion of the wall which lay on defendant’s property and formed part of the surface of the wall on defendant’s side. The testimony further indicated that the glass brick did not impair the strength of the wall. The glass bricks were subsequently removed by defendant, who replaced them with ordinary brick.
Plaintiff now brings this action for a declaratory judgment and seeks the following relief: (1) that the wall used as the *52 easterly wall of plaintiff’s building be declared its sole and exclusive property and not a party wall; (2) that defendant be restrained from interfering with plaintiff’s use of the wall and with plaintiff’s construction of openings or windows; (3) that defendant be compelled to restore the glass brick in said wall, and (4) that plaintiff be awarded damages by reason of defendant’s acts and conduct.
The facts here presented indicate that when title to the two properties, which had been in common ownership prior to 1882, was severed by conveyances from the common owners to separate persons, the wall presently in question, and which at the time of the conveyances supported buildings on each of the adjoining properties, became a party wall upon severance of the title by the description of the boundary line (Heartt v. Kruger, 121 1ST. Y. 386; 357 E. 76th St. Corp. v. Knickerbocker Ice Co., 263 N. Y. 63). In seeking to determine the present rights of the adjoining property owners, it is important to delineate the property rights originally had by each of the adjoining owners in that party wall. Each of the two adjoining owners of a party wall owns in severalty so much of the wall as stands upon his own lot, each having an easement in the other strip for purposes of the support of his own building (Partridge v. Gilbert, 15 N. Y. 601; 2 Thompson, Real Property, § 622, p. 245; 3 Tiffany, Law of Real Property [3d ed.], § 770, pp. 227, 228; National Commercial Bank v. Gray, 71 Hun 295, affd. 144 N. Y. 701). Although the land covered by a party wall remains the several property of the owner of each half, yet the title of each owner is qualified by the easement to which the other is entitled (Brooks v. Curtis, 50 N. Y. 639).
The unusual feature of the instant case lies in the subsequent intentional destruction of the buildings on both properties during the year 1901 while the wall, 16 inches wide and lying 8 inches on the property of each, was left standing. Thereafter and up to the present time, the wall has been used for support of a building on the plaintiff’s side only, such building having been erected in 1901 and 1902. Plaintiff contends that by virtue of these facts, the wall has become its “ sole and exclusive property ”.
The nature of the property rights incidental to the party wall relationship, which it has been found existed prior to 1901, as well as the facts presented herein, make plaintiff’s claim of. * ‘ sole ownership ’ ’ untenable.
It is not clear on what theory plaintiff seeks to establish its present exclusive ownership rights to the wall, but its reference to “ ownership ” leads one to a consideration of adverse posses *53 sion. The facts herein, as applied to the essential elements necessary to establish an effective adverse possession, negate such possibility and make unnecessary concern with the question of whether an adverse possession properly lies in connection with a party wall (see, e.g., Roe v. Strong, 107 N. Y. 350, 359; Jamieson & Bond Co. v. Reynolds, 174 App. Div. 78, 82). One of the essential elements of an effective adverse possession is hostile possession under a claim of right. The occupation must be hostile in its inception and must continue hostile at all times during the required period. The entry must be strictly adverse to the title of the rightful owner. If the occupation begins with recognition of the real owner’s estate, it is presumed to be subservient. The character of the possession depends upon the intention with which entry is made and occupation continued (Berke v. Lang, 202 Misc. 1108). The facts herein indicate that whatever use of the wall was made by plaintiff’s predecessors in title from the time of the destruction of the two buildings, was not with the necessary hostility to defendant’s title. From reference to paragraph 5 of the stipulated facts, it appears that the building plans originally filed in 1901 in connection with the building presently on plaintiff’s property indicated that the use of the wall in question was as a party wall. That the use of the wall continued as a “ party wall ’ ’ is indicated by the subsequent plans submitted in 1917 for the extension of the attic of the present building (par. 6 of stipulated facts). The wall is referred to as a party wall in every deed and mortgage in plaintiff’s chain of title. The record is bare of any evidence which indicates that plaintiff, or its predecessors in title, at any time exercised the necessary hostile possession. Adverse possession rests on hostile possession under claim of title to the exclusion of the true owner (Scallon v. Manhattan Ry. Co., 185 N. Y. 359). No such intention has been here shown, but, quite to the contrary, it appears that whatever use of the wall was made up to the time of the conduct involved in this litigation, was made with recognition of defendant’s rights to part of the wall, and not under any claim adverse to defendant’s title therein.
Plaintiff’s attempt to justify its cutting of openings and substitution of glass brick in the wall, by reference to an “ exclusive easement by prescription ” by virtue of its sole user of the wall during the more than 50-year period, is also of little avail. The rights acquired by prescription can only be measured by the rights enjoyed and exercised during the prescriptive period (Stewart v. State of New York, 104 Misc. 389; Mollenhauer v. Wolfe, 118 Misc. 390, affd. 207 App. Div. 869; 2 Thompson, Real *54 Property, § 629, p. 255). Here, the only use made of the wall during the post-1901 period was for support of plaintiff’s building. The first attempt to use the wall for any other purpose was in 1957, when plaintiff sought to substitute the glass brick in the wall, and defendant immediately rebuffed what it considered a use hostile to its property rights in that wall. Therefore, the only rights which plaintiff at this time could establish' as arising through prescription, in connection with that part of the wall lying on defendant’s property, would be the easement of support for its building.
Plaintiff makes much of the nonuser of the wall by the defendant during the post-1901 period, and contends that by virtue of such nonuse defendant had lost any easement rights which ■it had in the wall and consequently “ divested itself of any rights to use or control the wall ”. Whether defendant has, or has not, lost its “ easement ” rights in the wall is not material to plaintiff’s case, for defendant is not here seeking to assert easement rights — i.e., the right to the use of the wall for support of a building of its own — but has rather acted to protect its “ ownership ” rights in that part of the wall lying on its property. It is essential to recognize that the party-wall relationship which existed prior to 1901 vested in the adjoining owners both ownership and easement rights. Whether or not the party-wall relationship continued beyond 1901, plaintiff has failed to establish superior ownership rights to that part of the wall which lies on defendant’s property. These rights cannot be ignored (see Mileage Gas Gorp. v. Kushner, 245 App. Div. 836; and cf. Wilensky v. Robinson, 203 Ga. 423, Ann. 2 A. L. R. 2d 1129).
Thus, without determining whether or not the wall in question is presently a party wall, plaintiff has failed to sustain its right to make openings therein and substitute glass brick in that part of the wall that lies on defendant’s property, either by virtue of ownership of the entire wall or by prescription. Let us then turn to the question of whether or not such acts would be permissible if, in fact, the wall has maintained its party-wall character and is presently a party wall.
The precise determination of what character is assumed by a wall, heretofore a party wall by virtue of conveyances from a common owner, when both of the original buildings which it has supported are intentionally demolished and the wall is left standing in its entirety, appears to be a novel issue in this State. There are expressions to the effect that the easement which each adjoining owner has in a party wall is measured in extent and duration by the necessity for it, and when such necessity *55 ceases by the destruction of the buildings and wall, the rights resulting from it cease also (Heartt v. Kruger, supra, Bull v. Burton, 227 N. Y. 101; 357 East 76th St. Corp. v. Knickerbocker Ice Co., supra). It is important, however, to view these expressions in the context of the factual situations which prompted them, in order to garner the full import of their meaning. The holdings in these cases really determine that where there is an accidental destruction of the buildings and wall, there is no duty on either party to rebuild the wall, or join in the rebuilding thereof (Eeartt v. Kruger, supra); and similarly, where both building's are intentionally demolished, there is no obligation to maintain the wall for the benefit of one of the adjoining owners (357 East 76th St. Corp. v. Knickerbocker Ice Co., supra). In other words, this is a recognition that, while the mutual easements of support are not an encumbrance but rather a benefit (Kendricks v. Stark, 37 N. Y. 106), the continuation of the wall for the benefit of only one of the two adjoining owners is a burden to the extent that it places limitations upon the free use of that part of the other’s property covered by the wall. That the party wall must be maintained or continued so long as one of the adjoining owners has a building which utilizes it for support, is an understandable necessity. But to carry it beyond the life of that building, “ over the wishes ” of the adjoining owner, would be an unreasonable burden on the use of the objector’s property. Consequently, the duration of the easement, unless otherwise determined by agreement of the parties, has been limited to the support of the buildings attached to it at the time the relationship arose, and does not extend to entirely new buildings.
In other words, to the extent that the wall is a burden on the free use of the adjoining properties, the extent of that limitation is measured by the need of support by the adjoining buildings— and each adjoining owner is prohibited, despite personal wishes, from demolishing the wall as long as either of the original buildings is in condition to require the wall for support. ■However, once the buildings are both destroyed, either accidentally or intentionally, there is no duty or obligation on either to rebuild the wall, or to maintain the wall for the benefit of the other. Upon the destruction of the wall, both parties resume ownership of the portions of their premises previously covered by the wall, unqualified by the easements, and devoid of any pertinent right to compel rebuilding of the wall or to enforce contribution thereto, and are free to make any use which they wish of that property (40 Am. Jur., § 14, p. 492; Heartt v. Kruger, supra, Partridge v. Gilbert, supra). It is important in *56 this regard to note the relationship between the termination of the easements upon the destruction of the buildings and the inability of either to compel the continuance of the party wall, or the rebuilding thereof, if it too is destroyed, “ over the wishes ” of the other. Thus, while neither has the duty or obligation to continue the party-wall relationship, once the buildings are destroyed, there does not appear to be any prohibition to the continuation of that relationship if the parties so desire.
Relating the foregoing to the present case, it appears that, upon destruction of both buildings, the wall itself could have been demolished in its entirety (357 East 76th St. Corp. v. Knickerbocker Ice Co., supra), or each adjoining owner might have removed that portion of the wall lying on his property (Fettretch v. Leamy, 9 Bosw. 510; also, see, Hoffman v. Kuhn, 57 Miss. 746, 751). That was not here done.
If both adjoining owners had erected new buildings, each of which utilized the party wall, this case might come within the principles established by Douglas v. Coonley (156 N. Y. 521) where it was held that the effect of the reconstruction of the buildings and the wall, as they were before, operated to revive the easements, and that, in effect, the easements were merely suspended during the period of their destruction. Here, of course, only one of the adjoining owners rebuilt.
Mindful, therefore, of the rights which both parties had in connection with the instant wall after the demolition of the adjoining buildings, and which could have been exercised by either of them, the intentional retention of the wall in its entirety leads to the conclusion that it was the intention of the then adjoining property owners that the wall should continue as a party wall for the common use of both. An agreement that a wall shall be a party wall may be implied from the conduct of the parties (2 Thompson, Real Property, § 628, p. 252). The subsequent utilization of the wall by plaintiff’s predecessors in title as a “ party wall ”, as previously indicated, together with the apparent acquiescence of defendant’s predecessors in title, substantiate this conclusion, and it appears that the wall in question had been, and is at present, a party wall.
Is, then, the plaintiff entitled to make the openings and substitute the glass bricks, as it has sought to do, in a party wall?
The view in this State appears to be that there is no right to place windows, or openings, in a party wall, unless there is an agreement between the parties to the contrary (Cutting v. Stokes, 72 Hun 376, affd. 148 N. Y. 730; National Commercial Bank v. Gray, 71 Hun 295, affd. 144 N. Y. 701, supra, De Baun v. Moore, 32 App. Div. 397, affd. 167 N. Y. 598; Humane Soc. v. *57 Ryan, 137 N. Y. S. 74; Metzger v. 46 West 95 St., 216 App. Div. 289, affd. 244 N. Y. 520; 2 Warren’s Weed, New York Real Property, § 24.05, p. 152).
There are, moreover, some general tests used to determine the propriety of a use made of a party wall. ‘ ‘ A party wall is for the common benefit of contiguous proprietors. Neither may subject it to a use whereby it ceases to be continuously available for enjoyment by the other (Brooks v. Curtis, 50 N. Y. 639; Negus v. Becker, 143 N. Y. 303; Everett v. Edwards, 149 Mass. 588).” (Varriale v. Brooklyn Edison Co., 252 N. Y. 222, 224.) In refining the meaning of these general principles, the court in the Varriale case indicates that a use would be improper which “ subjects the wall to a use for the benefit of one owner whereby it ceases to be continuously available for enjoyment by the other. There has been an exclusive appropriation, which so long as it is suffered, will make equal use impossible ”. In illustrating the extent of the “ equality of enjoyment ”, the court makes it clear that it applies to “ potential” as well as actual interference. In that case, it found that plaintiff had been “ forced to submit to an encroachment which may subject her to the expense and delay of an injunction if thereafter she decides to build.” The court also voiced concern with the fact that the beams involved therein were placed ‘ ‘ upon a wall located on the plaintiff’s land ” and indicates that the defendant has no more right to place its beams there “ than it would have to project them without consent across the open space beyond.” So, in the case at bar, to permit the substitution of glass brick into that part of the wall which lies on defendant’s property is an encroachment which is fraught with potential interference with the uses which defendant might make of the wall and its property. If defendant wished to build upon the wall, or to use its side of the wall for advertising purposes, as it undoubtedly could (Mileage Gas Co. v. Kushner, supra), or plant trees or place a large screen (cf. De Baun v. Moore, 32 App. Div. 397, affd. 167 N. Y. 598, supra) immediately adjacent to the area where the translucent brick is sought to be placed blocking such area, it is highly probable that litigation would ensue, and defendant has the right to be protected against such a potential danger. (Cf. Metzger v. 46 West 95 St., 216 App. Div. 289, affd. 244 N. Y. 520.) Also, permitting such an encroachment might well give to the plaintiff such an exercise of dominion over the entire wall as to endanger defendant’s future property rights in the wall itself.
Chief Judge Cabdozo, in the Varriale case above, at page 226, affords the proper means of accomplishing the result desired *58 by the plaintiff. “ A privilege so valuable as not to be appropriated by a strong hand, but should be acquired, • if at all, through treaty and consent.”
The court does not at this time pass on the question of whether the insertion of such glass bricks in that part of the wall, which is solely within the limits of plaintiff’s own property line, for the purpose of accommodating an air-conditioning unit, would be improper, since such use might not be detrimental to defendant’s interests. (Cf. Spring Realty Corp. v. Ryan, 206 Misc. 37; 302 Lexington Ave. Corp. v. 37th St. & Lexington Ave. Corp., 34 N. Y. S. 2d 445; also, see, De Baun v. Moore, supra, and Brooks v. Curtis, supra, indicating what may properly be done to a party wall within the limits of one’s own lot.)
On the basis -of the foregoing, plaintiff’s request for relief must be denied. Plaintiff has failed to establish either its ownership of the entire wall, or its right to make openings and substitute glass brick instread of the ‘ordinary brick therein.
Complaint dismissed, without costs.
The foregoing will constitute the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment accordingly.